JOHN J. PIERCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pierce v. Commissioner
Docket No. 36908-85.
United States Tax Court
T.C. Memo 1987-525; 1987 Tax Ct. Memo LEXIS 516; 54 T.C.M. (CCH) 889; T.C.M. (RIA) 87525; October 8, 1987. Thomas C. Baratta, Jr., for the petitioner. John J. Comeau, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACTS AND OPINION COHEN, Judge: Respondent determine deficiencies in and additions to petitioner's Federal income taxes as follows: *517 Additions to Tax
I.R.C.
Tax Year Ended
Deficiency
Section 6653(b) [1]
12-31-71
- 0 -
$ 1,333.43
12-31-72
$ 1,197.00
1,589.00
12-31-73
2,233.00
2,533.00
12-31-74
2,983.00
2,911.00
12-31-75
2,839.00
2,556.00
12-31-76
3,863.00
3,769.00
12-31-77
2,893.00
4,081.00
12-31-78
5,386.00
4,929.00
12-31-79
5,377.00
5,397.00
12-31-80
6,919.00
6,758.00
The deficiencies resulted from determination that petitioner had unreported income for each of the years in issue, disallowance of expenses claimed on belatedly filed returns, and determination of self-employment tax due from petitioner. Attached to the notice of deficiency was a statement on a preprinted page stating that the total of the deficiencies constituted a substantial underpayment attributable to tax-motivated transactions under section 6621(d) [now section 6621(c)] and asserting additional interest of 120 percent of the normal rate. None of the adjustments in the statutory *518 notice, however, would support such additional interest. (Respondent's trail memorandum asserted that such interest was in issue, but failed to identify any ground for that determination.) The Court concludes that the determination of additional interest under section 6621(c) in this case is erroneous as a matter of law and must be disregarded. In his answer, respondent claimed, as an alternative, additions to tax under section 6651(a) and 6653(a) if the additions to tax under section 6653(b) are not sustained. At trial, petitioner failed to present any evidence in support of the deductions claimed, [2] and the parties represented that the sole issue to be determined is petitioner's liability for the additions to tax for fraud. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated *519 in our findings by this reference. Petitioner was a resident of Chicago, Illinois, when his petition was filed. In 1964, petitioner graduated from Notre Dame University and enrolled in the Loyola University School of Law in Chicago. While at Notre Dame, he was enrolled in business courses, including an accounting course. While in law school, petitioner was enrolled in a course in Federal income tax. Petitioner graduated from law school in 1968. While he was in law school, petitioner was employed by a law firm in Chicago. Through sometime in 1971, petitioner was employed as a law clerk/paralegal and received wages reported by his employer to the Internal Revenue Service on Forms W-2. In 1971, petitioner continued to work for the law firm but changed his status to a paralegal/private investigator and began receiving payments as an "independent contractor." Such payments were not subjected to Federal income tax withholding or social security taxes. Payments to petitioner from 1971 through 1980 by the law firm were reported on Forms 1099, copies of which were sent to petitioner by the law firm. In addition, during the years 1971 through 1980, petitioner received compensation *520 for his services from persons other than the law firm. Some but not all of that compensation was also reported on Forms 1099. Petitioner failed to file timely income tax returns for the years 1971 through 1980. For 1971, he either filed a return in January 1973, reporting only income shown on Forms W-2 and not income shown on Forms 1099, or he did not file a return at all prior to 1982. A criminal investigation of petitioner began sometime in 1981, and petitioner was contacted by special agents of the Internal Revenue Service. After that contact, in July 1982, petitioner filed income tax returns for the years 1971 through 1980. On the returns filed by him in 1982, petitioner reported gross income and tax as follows: Adjusted
Tax Year Ended
Gross Income
Tax Due
12-31-71
$ 13,321
$ 2,984
12-31-72
8,938
2,042
12-31-73
12,072
2,832
12-31-74
11,786
2,838
12-31-75
10,021
2,272
12-31-76
15,232
3,675
12-31-77
19,856
5,269
12-31-78
17,140
4,471
12-31-79
19,914
5,418
12-31-80
22,710
6,598
Petitioner also claimed business deductions on each of the returns for *521 1971 through 1980. Through and including the time of trial in June 1987, petitioner failed to present any books or records substantiating the business deductions claimed on those returns. Petitioner did, however, maintain copies of all but one of the Forms 1099 that had been sent to him by the Chicago law firm and by one other lawyer for whom he had performed services in 1978. Petitioner changed his residence in about 1978. The Forms 1099 for 1978, 1979, and 1980 contained an erroneous social security number for petitioner. During the years in issue, petitioner frequently cashed the checks that he received for his services, sometimes cashing them at currency exchanges rather than at the bank where he maintained an account. During the years in issue, petitioner had available funds to pay the amount of taxes that he owed on his earnings, but he failed to make any effort to make such payments. OPINION The 50-percent addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). *522 Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Hicks Co. v. Commissioner,56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). *523 Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). The failure to file tax returns, without more, is not proof of fraud; such commission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes. Stoltzfus v. United States, supra;Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), revg. a Memorandum Opinion of this Court; Kotmair v. Commissioner,86 T.C. 1253 (1986). Failure to file, however, may be considered in connection with other facts in determining whether an underpayment of tax is due to fraud. Where, as here, the petitioner was clearly aware of his obligation to file returns and pay taxes; he had substantial income and owed taxes for each year; and the period of nonfiling was *524 extensive and ended only after respondent's agents caught up with him, we may conclude that his conduct constitutes willful concealment of income to evade payment of taxes. Grosshandler v. Commissioner,75 T.C. 1, 19-20 (1980). In this case it is clear from petitioner's testimony that his failure to file returns was intended to conceal his nonpayment of taxes. He testified that, after he switched from being an employee to being an independent contractor, he had his tax return for 1971 prepared by an accountant. When he received the return from the accountant, he did not agree with it and spoke to the accountant. The accountant told him that it was correct and that he should file it. He was busy working on a trial for the law firm, and he did not file the return. According to petitioner, some time later, he remembered that he had not filed his return. He testified as follows: I went running back looking for it and I could not find the stuff. I said, my God. I was shocked very frankly. It was past the time. I was still trying to take the bar exam, I was working the the legal business. I was with all these men that were upstanding fine fellows. I had been *525 educated in this business. I know accounting, although I have only had one semester of accounting. I had tax courses. I know you have to file. I went through and determined I hadn't filed. I was scared, among other things, of losing business, of going to jail, whatever. But it was way past the time for filing. I remember I started researching the problem, went into the Federal Regs, went through case law. Failure to file is failure to file. I hadn't filed. Go see an attorney, they would throw me out in the street. I just didn't know which way to turn. If I knew today -- if I knew than what I know today, I could have gone into the IRS at any time and we wouldn't be here. We could have worked it out. I didn't. Over the years I spent time, kept my 1099's. I tried to figure out who I could go talk to. I needed somebody I knew, somebody that understood the business, somebody who understood me. Family, friends, business associates, future, jail. All that. Actually I picked out Mr. Baratta before this even happened. I couldn't get the nerve to go see anybody. I made a crazy and foolish mistake and just let it compound. * * * We need not accept petitioner's testimony *526 at face value. We carefully observed petitioner's demeanor as a witness and his manner of answering questions. The above-quoted testimony was given in response to his counsel's questions. He was less than candid and forthcoming in answering questions posed by respondent's counsel. His answers confirm that his is an intelligent and knowledgeable person, and we do not believe that his failure to file returns was attributable to forgetfulness, confusion, or fear. There is not other nonfraudulent explanation for the failure to file in this case. Petitioner acknowledges that he had available funds with which to pay his taxes as they were due from year to year. Compare Jones v. Commissioner,259 F.2d 300 (5th Cir. 1958). [3] Petitioner does not assert that he believed that he owed no taxes. The most significant evidence in this case is that petitioner's pattern of failure to file commenced with his change of status from employee to independent contractor and the resulting failure to pay income taxes through withholding. *527 This evidence is clear, and we are convinced, that either (1) petitioner deliberately switched to nonemployee status in order to reduce the likelihood of collection of taxes by avoiding withholding, or (2) he decided not to file his returns when he found that he owed taxes that had not been "prepaid" through withholding. Either way, petitioner's intent was to avoid the payment of taxes he knew to be owing. This evidence, therefore, combined with the long period of nonfiling with the admitted purpose of concealment, satisfies respondent's burden of proof. Petitioner testified that he did not file a return for 1971, as indicated above. A transcript of petitioner's account appears to reflect a filing in January 1973 of a tax return for 1971 reporting a small amount of tax. Respondent argues that petitioner filed a fraudulent return for 1971 reporting only the income shown on W-2's and that the small amount of tax shown on the transcript, compared to the larger amount of tax shown on the transcript, compared to the larger amount reported on the 1971 return filed in 1982, supports this theory. Whether he filed a return underreporting his income or failed to file a return under the *528 circumstances discussed above, we conclude that there was an underpayment due to fraud. It is not necessary, therefore, to resolve the question of whether or not a 1971 return was filed in 1973. Petitioner argues that his filing of the returns in 1982, after he was contacted by special agents, and his subsequent agreement to pay the taxes on an installment basis, negates fraudulent intent. In these circumstances, however, we are not persuaded by petitioner's argument. See Plunkett v. Commissioner,465 F.2d 299, 303-304 (7th Cir. 1972). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the years in issue, except as otherwise noted. ↩
2. With the notice of trail, the Court served a Standing Pre-Trial Order requiring that documentary evidence by stipulated or exchanged prior to trial. Petitioner failed to comply with that order and, at the calendar call, the Court ruled that he would not be allowed to present any such evidence at trial. Petitioner did not seek relief from that order. ↩
3. See also DePumpo v. Commissioner,T.C. Memo. 1971-115 and Morrell v. Commissioner,T.C. Memo. 1971-99↩.