LARRY H. WILLIAMSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williamson v. Commissioner
Docket No. 4664-93
United States Tax Court
T.C. Memo 1994-480; 1994 Tax Ct. Memo LEXIS 488; 68 T.C.M. (CCH) 824; October 3, 1994, Filed *488 Decision will be entered for respondent for the additions to tax determined in the alternative. For petitioner: Amy Robertson Goldson. For respondent: Michal Cline. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined zero deficiencies and additions to tax based on belatedly filed tax returns as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(2)
1985
-0-
-
$ 3,054
50% of the interest due on $ 2,522 1986
-0-
-
-
-
1987
-0-
-
-
-
1988
-0-
$ 9,378
-
-
Sec.
Sec.
Sec.
6653(b)(1)(A)
6653(b)(1)(B)
6654
1985
-
-
$ 93
1986
$ 4,537
50% of the interest
158
due on $ 3,829
1987
9,475
50% of the interest
680
due on $ 12,634
1988
-  -  799
Respondent also determined, in the alternative, that petitioner is liable for additions to tax under sections 6651(a) and 6653(a). All of the additions to tax remain in dispute. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT *489 Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Washington, D. C., at the time he filed his petition. In 1972, petitioner received a bachelor of science degree with a major in economics from the University of North Carolina. In 1974, petitioner received a master of business administration degree from the University of Southern California. From January 5, 1981, to November 1985, petitioner held the position of "Senior Financial Analyst" for TransAmerican Natural Gas Corporation (TransAmerican) in Houston, Texas. On September 18, 1984, and October 2, 1984, petitioner submitted to his employer Forms W-4 on which he claimed, respectively, 16 and 20 withholding allowances. In November 1985, petitioner became "Supervisor of Royalty Accounting" at TransAmerican. On or about December 8, 1983, petitioner formed a business known as the Oil Change Corporation. Petitioner borrowed $ 15,000 from his mother to fund the corporation and began repaying between $ 250 and $ 400 per month to his mother. By 1986, petitioner, the Oil Change Corporation, and TransAmerican had suffered financial difficulties. *490 Petitioner began to look for new employment outside of Houston. On July 14, 1986, petitioner's wages at TransAmerican were levied upon by the Internal Revenue Service (IRS) for deficiencies in income taxes for 1982 and 1983. Upon learning of the levy, petitioner resigned his position at TransAmerican, leaving no forwarding address. On August 15, 1986, Federal income tax liens were recorded against petitioner in Harris County, Texas. Beginning in November 1986 and continuing through trial of this case in 1994, petitioner worked as a "Contract Employee" for Arrendell Management Group International Company (AMG). Petitioner's responsibilities for AMG were to maintain the day-to-day bookkeeping/accounting functions of the business, including preparation of financial statements. On behalf of AMG, he prepared and filed with the IRS Forms 1099, reporting the income that was paid to him and showing addresses in Washington, D. C., as his address. From August 1986 to January 1990, petitioner dealt only in cash and did not maintain a checking or savings account. On or about December 9, 1987, petitioner paid $ 6,500 for an automobile by depositing the necessary cash into his employer's *491 checking account and writing checks on that account. Petitioner registered the automobile listing his employer's address as his residence. Petitioner did not make any estimated payments on his income tax liability for any of the years in issue. Petitioner was well aware that the salary checks and contract wages that he received during the years in issue constituted taxable income and that he had an obligation to file returns, to report all income for each of the years in issue, and to pay taxes on his income. However, he did not file his income tax returns for the years in issue until January 1990, after he was contacted by the IRS. On his late-filed returns, petitioner listed his occupation as "accountant" and showed his filing status as single. He claimed one exemption, and he did not report any business losses. The returns reported taxable income of $ 30,473, $ 28,944, $ 34,310, and $ 34,550 for 1985, 1986, 1987, and 1988, respectively. The tax due was $ 6,108, $ 6,049, $ 12,634, and $ 12,504 for 1985, 1986, 1987, and 1988, respectively. Respondent accepted the tax liability of petitioner as calculated on petitioner's late-filed returns but determined the additions to *492 tax set forth above. On August 29, 1991, petitioner pled guilty to misdemeanor counts of failure to file Federal income tax returns for 1986, 1987, and 1988 in violation of section 7203. OPINION The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Respondent has the burden of proving, by clear and convincing evidence, an underpayment for each year and that some part of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), *493 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence, because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Failure to file tax returns, without more, is not proof of fraud; such omission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes. See Kotmair v. Commissioner, 86 T.C. 1253 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Klein v. Commissioner, T.C. Memo. 1984-392, affd. 880 F.2d 260 (10th Cir. 1989); DePumpo v. Commissioner, T.C. Memo. 1971-115; Morrell v. Commissioner, T.C. Memo. 1971-99. *494 Failure to file, however, may be considered in connection with other facts in determining whether any deficiency or underpayment of tax is due to fraud. Beaver v. Commissioner, supra at 93. In our view, the issue of fraud in this case is a close one. We have sustained additions to tax for fraud in a case otherwise similar on the facts but where the taxpayer acknowledged that he had funds available to pay the taxes as they became due. Pierce v. Commissioner, T.C. Memo. 1987-525. Respondent relies on several "badges of fraud" in this case, i.e., failure to file returns, admitted to be willful by petitioner's guilty plea; claims of excessive withholding allowances on Forms W-4; ceasing employment when collection efforts were instituted by the IRS for earlier years and moving without leaving a forwarding address; commencing employment as a "Contract Employee" to avoid withholding and without making estimated tax payments; and "false" testimony about filing corporate and District of Columbia tax returns. Petitioner claims that he did not file his tax returns because he believed that he had to send payment along with *495 the returns, and his severe financial difficulties prevented his paying the taxes. He contends that his failure to file and pay in a timely fashion under these circumstances was due to reasonable cause. His assertions in this regard are not worthy of belief. His arguments that he had reasonable cause, to avoid the additions to tax under section 6651(a), and that he was not negligent, to avoid the addition to tax under section 6653(a), border on frivolity and will be given short shrift. (Section 6654 "has no provision relating to reasonable cause * * * [or] lack of willful neglect. It is mandatory and extenuating circumstances are irrelevant." Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960).) Petitioner's other explanations, however, cannot be so easily rejected as implausible. On behalf of AMG, he prepared and filed Forms 1099 reporting the income that was paid to him and an address in Washington, D.C., where he could be located. Thus, according to petitioner, he did not conceal the nature and extent of his income or his whereabouts. He claimed excessive withholding allowances, he asserts, because he thought that the losses from his *496 Oil Change Corporation business would offset his income. Although respondent relies on petitioner's entitlement to a single "exemption", withholding allowances are not limited to personal exemptions. Petitioner's argument in this regard is not wholly untenable, although it is not corroborated by his belatedly filed tax returns. Petitioner's explanation of the other changes in his life, including leaving Houston and an employer whose financial prospects were bleak and attempting to repay money borrowed from his mother, are not implausible. Respondent has not shown to be false petitioner's claims concerning his financial condition. Surely he was at least giving priority to creditors other than the IRS. From August 1986 to January 1990, petitioner dealt only in cash and did not maintain a checking or savings account. Conduct intended to conceal is an indication of fraud, but we have no clear and convincing evidence of that intent here. It appears that petitioner maintained the records necessary to file the returns, eventually filed correct returns, and belatedly made arrangements to pay his tax liabilities. Troublesome are petitioner's inconsistent claims, contrary to the record, *497 that he filed corporate tax returns and District of Columbia tax returns. Petitioner stipulated that he did not file individual income tax returns with the District of Columbia for 1986, 1987, and 1988. He testified at trial that he filed District of Columbia returns for 1987 and 1988 at the time he filed his late Federal tax returns. He also testified at trial that he thought that he filed a Maryland return for 1986 because he was a resident of Silver Spring, Maryland, but he was not sure. His brief asserts positively that he filed a Maryland return. Yet he also relies on his filing of Forms 1099 for AMG showing a Washington, D.C., address for himself for 1986. On the basis of the entire record, we are not convinced that petitioner had the requisite fraudulent intent at the time he failed to file his Federal income tax returns for the years in issue. The additions to tax for fraud will not be sustained. We do not intend by this opinion to vindicate petitioner. We reject categorically his assertions that his failure to file was due to reasonable cause and not due to willful neglect. His testimony at trial was unpersuasive, although not demonstrably false. The pattern of *498 failure to file and his implausible arguments unsupported by the record are suspicious. Suspicion, alone, however, is not a sufficient basis for determination of fraud. See, e.g., Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). The sections 6651(a), 6653(a), and 6654 additions to tax will be sustained. Decision will be entered for respondent for the additions to tax determined in the alternative.