**Ben KLEIN, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.**

No. 85–1245.

United States Court of Appeals,
Tenth Circuit.

July 10, 1989.

Rick Budd, Drexler & Wald, Denver, Colo. (Benjamin Spitzer, Drexler & Wald, Denver, Colo., was also on the brief), for petitioner-appellant.

Nancy G. Morgan, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., Michael L. Paup and Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D.C., were also on the brief), for respondent-appellee.

Before HOLLOWAY, Chief Judge,
and SEYMOUR and BALDOCK, Circuit Judges.

HOLLOWAY, Chief Judge.

Ben Klein (Klein) appeals the Tax Court's decision sustaining deficiencies in income tax and civil fraud penalties under 26 U.S.C. § 6653(b) (1982) for the years 1966–1970. The Tax Court held that Klein's 1973 conviction under 26 U.S.C. § 7201, for evading taxes from 1966–1970, collaterally estopped him from denying civil fraud for those same years. *Klein v. Commissioner,* 48 TCM 651, 658–661 (1984). We affirm.

I

FACTUAL BACKGROUND &
PROCEDURAL POSTURE

We affirmed Klein's five convictions for tax evasion in 1975. *See United States v. Klein,* 35 AFTR 2d 75–1282 (10th Cir.1975), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). In doing so, we rejected Klein's argument that the record so clearly established his mental incompetency at the time of the offenses that the issue of his mental capacity to form intent to defraud should not have been submitted to the jury. *Id.* at 75–1284—1286. We noted that numerous expert and lay witnesses on both sides had testified regarding the issue of Klein's competency and held that "there was ample evidence from which the jury could have concluded that Klein was competent." *Id.* at 1285.

## A.

### Klein's 1978 Motion for a New Trial

Klein filed a motion for a new trial in 1978 in his criminal case on the ground of newly discovered evidence. He argued then, as he does again now, that the Bureau of Narcotics and Dangerous Drugs (B.N.D.D.) and the I.R.S. suspected before trial that he was involved in narcotics trafficking. Klein said that the government should have disclosed that suspicion. The trial court denied the motion, reasoning that it was untimely and that the new evidence would not have been admissible or exculpatory. We affirmed the denial of the motion. *United States v. Klein*, No. 73–CR–11 (D.Colo. April 10, 1978), *aff'd*, No. 79–1024 (10th Cir. May 11, 1979) (per curiam) (upholding the trial court's ruling that the motion was untimely), *cert. denied*, 444 U.S. 925, 100 S.Ct. 264, 62 L.Ed.2d 182 (1979).

## B.

### 1985 Petition for a Writ of Coram Nobis and 1988 Motion for a New Trial

In an opinion filed separately today we affirm both the trial court's denial of a petition for a writ of *coram nobis* (attacking Klein's 1973 tax evasion convictions) filed by Klein in 1985, and the trial court's denial of a Rule 60(b) motion for a new trial filed by Klein in 1988, challenging that denial of *coram nobis* relief. *See Klein v. United States of America*, 880 F.2d 250 (10th Cir.1989).

In affirming the denial of *coram nobis* relief we reject Klein's argument that there was newly discovered evidence that probation officer Hyland had knowledge of Klein's mental condition in the Navy, which both he and the prosecutors improperly failed to disclose. We reject the argument because there is conclusive evidence that prior to trial both Klein and his attorney had knowledge of Hyland and of Klein's mental condition in the Navy and because Hyland's testimony would not likely have made a difference. Our opinion also rejects Klein's argument that the government improperly withheld its suspicion that he was financing narcotics deals, concluding that this evidence, if admissible at all, would not likely have made a difference.

Klein's motion for a new trial on the petition for a writ of *coram nobis* was based on *People v. Klein*, 756 P.2d 1013 (Colo.1988) (en banc) (*Klein II*), the Colorado Supreme Court's decision reinstating Klein to the practice of law. Klein argued that *Klein II* recognized that he had suffered from mental illness, thus supporting his incompetency defense to his 1966–1970 federal tax convictions. Klein had been suspended from the practice of law in 1972 for an indefinite period of time, but in no event for less than three years, for fabricating documents and presenting them to the Colorado Supreme Court Grievance Committee in defense of pending allegations of professional misconduct. *See People v. Klein*, 179 Colo. 408, 500 P.2d 1181 (1972) (en banc) (*Klein I*). In granting Klein's petition for reinstatement, the court in *Klein II* found that Klein had regained his mental health (he had earlier asserted that he was mentally disabled) and was competent to practice law. *Klein II*, 756 P.2d at 1016. In affirming the district court's denial of Klein's motion for a new trial in his federal *coram nobis* proceeding, we reject the argument that *Klein II* rendered the judgment denying relief on the petition for a writ of *coram nobis* inequitable. *See Klein*, 880 F.2d at 257–259.

## C.

### Proceedings in the Tax Court

A detailed discussion of the factual background of the tax proceeding is set forth in *Klein v. Commissioner*, 48 TCM 651, 658–661 (1984) (*Klein Tax*). Briefly, Klein received a notice of deficiency in income tax and additions to tax for civil fraud penalties from 1962 through 1970. The Tax Court found that the government had failed to prove fraud for the years 1962 through 1965, and also reasoned that Klein was collaterally estopped by his 1973 convictions from denying fraud for 1966

through 1970. *Id.* at 658–661.[1] The 1962–1965 years are no longer at issue.

With respect to the 1966–1970 years, the Tax Court applied the well established principle that a conviction under § 7201 collaterally estops a taxpayer from denying fraud for purposes of a § 6653(b) civil tax case involving the same years. *Id.* at 658. The court then discussed the requirements for the application of collateral estoppel: that the issues presented are in substance the same as those previously resolved, that the controlling facts or legal priciples have not changed, and that there are no special circumstances warranting an exception to the normal rules of issue preclusion. *Id.* at 659.

The court held that the testimony of James Hyland and Mary Ann Gill regarding Klein's mental condition, and the testimony of various psychiatrists and psychologists who examined Klein after his criminal conviction, did not significantly change the controlling facts. The court also held that some of this evidence was not unavailable during the criminal trial. *Id.* The court found unpersuasive Klein's argument that special circumstances (the withheld belief of the B.N.D.D. and I.R.S. that Klein was financing narcotics deals) warranted an exception to the normal rules of issue preclusion, noting that the government had offered no evidence at trial that illegal drug trafficking was a likely source of income. *Id.* Klein filed a timely notice of appeal.

## II

## ANALYSIS

■ Klein concedes the well established rule that a conviction under 26 U.S.C. § 7201 for federal income tax evasion collaterally estops a taxpayer from denying fraud in a subsequent civil proceeding under 26 U.S.C. § 6653(b).[2] *Amos v. C.I.R.*, 360 F.2d 358, 359 (4th Cir.1965). Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Collateral estoppel only applies where, as here, the party against whom the earlier decision is asserted had a "full and fair opportunity" to litigate that issue in the earlier case.[3] *Commodity Futures Trading Commission v. Chilcott Portfolio Management*, 713 F.2d 1477, 1485–1486 (10th Cir.1983).

■ Whether the application of collateral estoppel is appropriate necessitates four inquiries: first, whether the party to be estopped was a party to or assumed control of the prior litigation; second, whether the

1. The Tax Court sustained deficiencies in income tax and also civil fraud penalties under 26 U.S.C. § 6653(b) (1982) for the years 1966–1970. Klein opposes here both the deficiencies in tax and the civil fraud penalties. He asserts that if "collateral estoppel does not prevent him from denying fraud for the years 1966 through 1970, then the statute of limitations would prevent the Internal Revenue Service from assessing any tax for those years." Brief in Response for Appellant Ben Klein, p. 4. The 1962–1970 years were all beyond the statute of limitations, so that clear and convincing evidence of fraud was required. *Id.* at 656–657. If we found error in the application of collateral estoppel by the Tax Court as to the 1966–1970 years, Klein would dispute any factual attempt to show fraud by clear and convincing evidence.

2. While the government's burden of proof differs in the two contexts, the elements of criminal tax evasion under § 7201 and civil tax fraud under § 6653(b) are identical. *See Gray v. C.I.R.*, 708 F.2d 243, 246 (6th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984).

3. We are satisfied that in the 1973 criminal trial Klein had a "full and fair opportunity" to litigate the issue of his competency to stand trial and his mental capacity to form the intent to evade taxes from 1966–1970. As we noted in affirming his conviction, two psychologists, two psychiatrists, twelve lay witnesses and a handwriting expert gave testimony to support a finding of mental incompetency at the time of the offenses. *Klein*, 35 AFTR 2d at 1285. Three psychiatrists, one psychologist and a number of lay witnesses testified as part of the government's case that while Klein was possibly mentally ill, he was competent at the times the offenses were committed. *Id.* As we held, "the issue was properly presented to the jury, and there was ample evidence from which the jury could have concluded that Klein was competent." *Id.*

issues presented are in substance the same as those resolved in the earlier litigation; third, whether the controlling facts or legal principles have changed significantly since the earlier judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion. *Montana v. United States*, 440 U.S. 147, 153–155, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979). It is undisputed that Klein was the defendant in the 1973 criminal trial and that the issues presented in the civil tax case were in substance the same as those presented in the tax evasion trial. Klein argues that the controlling facts regarding his mental capacity have changed significantly since 1973 and that special circumstances warrant an exception to the normal rules of preclusion.

## A.

### Change in Controlling Facts

■ Klein argues that the testimony of Chief Probation Officer James Hyland (Hyland) and Mary Ann Gill (Gill) constitutes evidence of a change in controlling facts regarding his mental capacity during the years at issue (1966–1970) and at the time of trial. Hyland, who observed Klein in the Navy while working as chief pharmacist at a psychiatric observation unit during 1945, testified in the Tax Court trial that Klein exhibited various signs of mental illness in the Navy. Klein was discharged in 1945 for mental illness. Gill, a friend of Klein's from 1961 through the time of the criminal trial, said that Klein had exhibited signs of mental illness throughout their

relationship and that she had advised Klein to seek psychiatric help as early as 1962.

The Tax Court held that this evidence was not " 'unavailable' during the criminal trial and [that] it was merely cumulative with respect to the basic issue of petitioner's capacity to form a fraudulent intent. In any event, the evidence does not alter the controlling facts. *See Dean v. Commissioner*, [Dec. 30,901], 56 T.C. 895 (1971); *see also Fairmount Aluminum Co. v. Commissioner* [Dec. 20,588], 22 T.C. 1377 (1954), *aff'd.* [55–1 USTC ¶ 9456], 222 F.2d 622 (4th Cir.1955), [*cert. denied*, 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955) ]." *Klein Tax*, 48 TCM at 659. We agree.[4] A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence. As we held in *Jones v. United States*, 466 F.2d 131, 136 (10th Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 257 (1973), if the case was not "effectively presented at the first trial it was [the taxpayer's] fault; affording … a second opportunity in which to litigate the matter, with the benefit of hindsight, would contravene the very principles upon which collateral estoppel is based and should not be allowed." We think the Tax Court was clearly within its discretion in finding this evidence cumulative and historical in nature. We agree that no change is shown in the controlling facts so as to justify disregarding the prior determinations in the criminal trial.[5]

Klein also argues that the testimony of several expert witnesses changed the controlling facts. All of the new expert wit-

---

4. We note here our conclusion in Klein's *coram nobis* appeal that both Klein and his attorney knew of Hyland's experience with Klein in the Navy. *Klein*, 880 F.2d at 256. And Gill had known Klein since 1961 and was not therefore unavailable. Klein's argument that he could not be expected to exercise due diligence in 1973 because he was mentally ill proceeds on a false premise. The trial court found him competent on two occasions after hearings to stand trial and we affirmed that finding on appeal, as well as the jury's determination that he had the mental capacity to form the specific intent to defraud. *See Klein*, 35 AFTR 2d at 75-1284—1285.

5. After the briefs in this appeal were filed, the Colorado Supreme Court decided *Klein II*, finding that Klein had regained his mental health and reinstating him to the practice of law. *Klein II* does not purport (nor could it) to challenge the jury's finding that Klein had the mental capacity to defraud. In fact, the court specifically notes that Klein's mental defense was rejected by the jury in 1973. *Klein II*, 756 P.2d at 1014. *Klein II* does not change the controlling facts or warrant an exception to the rules of preclusion.

nesses who testified [6] examined Klein after his suspension from the practice of law in 1972, the death of his parents in 1973, and his criminal conviction. Moreover, each of the experts diagnosed Klein after the tax years which are at issue here, 1966 through 1970, and after the time of trial in 1973. As noted earlier, numerous expert witnesses testified at the criminal trial in 1973 that Klein did not have the mental capacity to defraud. However, on consideration of this evidence and the government's evidence from several witnesses that Klein had the requisite mental capacity to defraud at the time of the offense, *see* n. 2, *supra*, the jury rejected Klein's incompetency defense. The new expert testimony does not, as it must, alter the controlling facts on the issue of Klein's mental capacity from 1966–1970 or at the time of trial. *See Montana*, 440 U.S. at 155, 99 S.Ct. at 974. The Tax Court did not err in concluding that this testimony did not change the controlling facts.[7]

### B.

#### Special Circumstances

Klein last argues that special circumstances warrant an exception to the application of collateral estoppel. *See Montana*, 440 U.S. at 155, 99 S.Ct. at 974. As noted earlier, the B.N.D.D. and I.R.S. suspected before trial that Klein was financing narcotics deals. Klein contends that this suspicion motivated his prosecution. He argues that if he had known of this suspicion he could have proved it unfounded at trial, thereby impeaching the soundness of the government's investigation and its decision to charge him.

This argument lacks merit and the Tax Court was well within its discretion to conclude that it did not constitute a special circumstance warranting an exception to the application of collateral estoppel. As we noted in affirming the denial of *coram nobis* relief, no evidence relating to the drug accusations was introduced at trial. *Klein*, 880 F.2d at 255. It is dubious whether the drug evidence would even have been admissible. *Id.* at 254, n. 3. And if it had been admitted, it is unlikely that it would have helped Klein.

### III

### CONCLUSION

Trial courts are granted broad discretion in the application of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979); *Nevada Power Co. v. Watt*, 711 F.2d 913, 932 n. 17 (10th Cir.1983). The Tax Court's thorough and well reasoned opinion that Klein was collaterally estopped to deny civil tax fraud from 1966—1970 manifests a proper exercise of discretion.

AFFIRMED.

---

**6.** Psychologists Leonard Verhely and Delane Kinney examined Klein in 1975. Both concluded that he suffered from undifferentiated schizophrenia. III R. 420, 426, 433.

A number of psychiatrists also testified. George Katz saw Klein in 1980 and made a diagnosis of paranoid schizophrenia. III R. 148–149. Edward Casper saw Klein in 1977 and said that he suffered from chronic paranoid schizophrenia. III R. 166. Brante Steele evaluated Klein in 1974 and diagnosed paranoid schizophrenia. III R. 178–179. Robert Fairbairn saw Klein approximately 75 times beginning in 1981 and diagnosed paranoid schizophrenia. III R. 207. He also said that he thought Klein was schizophrenic from 1962 through 1972. III R. 232.

This testimony is cumulative and does not change the controlling facts. A number of experts testified at trial that Klein was paranoid schizophrenic. *Klein*, 35 AFTR 2d at 1285.

Moreover, Doctor Fairbairn, who had the greatest contact with Klein, specifically said that Klein's 1973 conviction had a devastating effect on Klein and "aggravated his condition." III R. 240.

**7.** Klein notes that he was committed for mental observation and study in 1975 by order of the district court. *See* Exh. K. He was also awarded social security disability pension benefits in 1975, based on a diagnosis of chronic undifferentiated schizophrenia. *See* Exh. 47; III R. 451. And in 1980 the Veteran's Administration determined that Klein was entitled to a pension. III R. 148–150, 164–166. These various events all occurred after Klein's conviction, the death of his parents, and his suspension from the practice of law and do not change the controlling facts regarding his mental condition during the earlier years in question.