In re Larry Gene BARNHART and
Cathy Jeanette Barnhart, Debtors.

**NORTHWESTERN NATIONAL
INSURANCE COMPANY,
Plaintiff/Appellee,**

v.

**Larry Gene BARNHART and Cathy
Jeanette Barnhart,
Defendants/Appellants.**

Civ.A. No. 88–K–1376.

Bankruptcy No. 87 B11849 C.

Adv. No. 87 C 1008.

United States District Court,
D. Colorado.

March 22, 1990.

Michael Waters, Jay Ronald Voss, Lori Moore, Retherford, Mullen, Rector & Johnson, Colorado Springs, Colo., for Northwestern Nat.

William A. Alexander, Jr., Colorado Springs, Colo., for Barnhart.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this bankruptcy appeal, the debtors, Larry and Cathy Barnhart, argue that the bankruptcy court erroneously entered summary judgment against them on Northwestern National Insurance Company's claim that a portion of the Barnhart's debt to it was nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code.[1] The court entered summary judgment by giving collateral estoppel effect to a state court judgment in which Mr. Barnhart was found to have fraudulently misrepresented the amount of his loss on an insurance claim to Northwestern. The Barnharts contend that this ruling was improper because the law of the case established that collateral estoppel was inapplicable and because the state court judgment did not conclusively determine the amount of Northwestern's damages relating to fraud. I affirm.

### I. *Facts.*

Larry Barnhart owned and operated an automobile repair business and gas station known as the Power Stop. He insured the Power Stop against business loss through a policy with Northwestern. On July 12,

---

1. Section 523(a)(2)(A) excepts from discharge debts "for money, property or services ... to the extent obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

1982, there was a break-in at the Power Stop, and some of the Barnharts' tools were stolen. Before Northwestern's claims adjuster arrived, Mr. Barnhart hid some tool boxes and then indicated that the boxes were stolen along with the other tools. Later, Mr. Barnhart moved the tool boxes to a rented storage unit.

Mr. Barnhart then submitted a claim of $55,000.00 to Northwestern for the lost tools. After negotiations with Northwestern as to the depreciation of the tools, Northwestern paid $48,648.21 on the claim. On October 18, 1982, police investigating the burglary received a tip that some of the stolen property was located at the storage unit. They obtained a warrant and searched the unit, discovering the hidden tool boxes and other items. Police then questioned Mr. Barnhart, and he admitted listing the boxes on the insurance claim and otherwise padding the claim by approximately $33,000.00. Barnhart also admitted that his actual, out-of-pocket loss in the burglary was approximately $15,000.00. Barnhart's conversation with the officers was recorded by one officer on a hidden tape recorder.

In July, 1984, Northwestern commenced a state court civil action against Mr. Barnhart for recovery of its payment on the falsified claim. Northwestern alleged three claims for relief: breach of contract, fraud, and conversion. Given the fact that Mr. Barnhart admitted to falsifying his claim, the state court granted a directed verdict for Northwestern. It awarded Northwestern the entire amount of its payment to Mr. Barnhart, $48,648.21 plus interest, because Mr. Barnhart's policy contained a clause which provided that Northwestern was entitled to repayment of the entire amount in the event the policyholder made a fraudulent misrepresentation as to the claim. Barnhart appealed this decision, and the state court's award was upheld on appeal. *See Northwestern Nat'l Ins. Co. v. Barnhart*, 713 P.2d 1360 (Colo.App. 1985). Mr. Barnhart also plead guilty to criminal charges of felony theft and was ordered to make restitution in the amount of the civil judgment. The Barnharts then filed for bankruptcy.

On December 11, 1987, Northwestern commenced the instant action seeking a determination that a part of Mr. Barnhart's debt to it was non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code. Northwestern claimed that $33,000.00 of the debt was nondischargeable, since this was the amount that Mr. Barnhart had admitted was fraudulent. It did not claim that the entire $48,648.21 was nondischargeable, since that award was based on the fraud clause in the insurance policy and it included the $15,000 amount that Mr. Barnhart actually lost in the burglary. On May 10, 1988, Northwestern moved for summary judgment on its claim, arguing that Barnhart was collaterally estopped from challenging the state court finding that he had committed fraud. After a hearing on the matter, the bankruptcy court granted the motion. It found that $33,000.00 of the debt was nondischargeable, less certain amounts for restitution made by Mr. Barnhart and for costs recovered by Northwestern. The Barnharts now appeal this judgment.

## II. *Issues.*

### A. *Law of the Case.*

The Barnharts first argue that the bankruptcy court should not have granted summary judgment based on collateral estoppel because the court had determined previously that this doctrine would not apply. Specifically, the Barnharts cite portions of the transcript of the bankruptcy court's hearing on an earlier motion to dismiss Northwestern's complaint. In this hearing, the court indicated that the bankruptcy court was required to make an independent determination whether there was fraud under the Bankruptcy Code, despite a state court finding that such fraud existed. *See* R.Vol. II at 3. Immediately following this statement, however, the court outlined the procedure it intended to follow in considering Northwestern's complaint:

> Well, what typically is done then—I'm not going to retry the whole thing, I mean, the debtor doesn't get two bites at the apple, lost in the state court and then can come over here and try and re-liti-

**394**

gate the whole thing again; typically what is done is it's submitted on the transcripts, and then I have to read the transcript and see if, in fact, there is fraud under the Bankruptcy Code.

*Id.* at 4. The court reaffirmed that it intended to follow this approach in later rulings as well. *See id.* Vol. III at 8. These passages clearly indicate that the bankruptcy court was consistently intending to give collateral estoppel effect to the state court judgment. There is no evidence in the record that the bankruptcy court had ruled previously that collateral estoppel would not apply in this case.

B. *Application of Collateral Estoppel on Damages Relating to Fraud.*

The Barnhart's other contention in this appeal is that the bankruptcy court erroneously granted summary judgment as to the amount of the debt relating to Mr. Barnhart's fraudulent inflation of his insurance claim. They argue that the state court awarded damages on Northwestern's breach of contract claim and that it made no specific determination as to the amount of damages to Northwestern directly as a result of Barnhart's fraudulent misrepresentations. Therefore, they contend that they are entitled to a *de novo* determination of this issue.

In *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762 (10th Cir.1988), the Tenth Circuit recently outlined the standards for applying the doctrine of collateral estoppel in bankruptcy proceedings to determine the dischargeability of a debt.

[C]ollateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*Id.* at 765; *see also Lewis v. Bottagaro (In re Bottagaro)*, 95 B.R. 766, 767 (D.Colo. 1987); *Pacific Energy & Minerals, Ltd. v. Austin (In re Austin)*, 93 B.R. 723, 726–27 (Bankr.D.Colo.1988). In this case, there is little question these three requirements are met with respect to the issue of Mr. Barnharts' fraudulent conduct toward Northwestern. The state court directed a verdict for Northwestern on all three claims, including the common law fraud claim. Since the elements for a finding of common law fraud under Colorado law are the same as those under federal law, *see Simmons v. Wade (In re Wade)*, 43 Bankr. 976, 980 (Bankr.D.Colo.1984), the issue was actually and necessarily litigated.[2]

The Barnharts argue, however, that since the court awarded contract damages, and not damages based on fraud, there was no actual adjudication of the amount of the debt relating to Mr. Barnhart's fraudulent conduct. Yet, the state court expressly found that Mr. Barnhart's actual monetary loss in the burglary was $15,000 and that he had inflated his loss by $33,000. This finding was based on undisputed evidence introduced in the state court trial that Mr. Barnhart admitted to police officers that these figures correctly represented his actual loss and his inflated loss. The bankruptcy court then reduced the $33,000 amount by $335 to account for one restitution payment made by Mr. Barnhart and by $800 to represent the stipulated value of certain property which was returned to and sold by Northwestern.

I conclude that the bankruptcy court did not err in basing its determination as to the nondischargeability of the Barnharts' debt on findings made in the state court proceedings. While perhaps the issue of Northwestern's damages relating to fraud alone was not necessary to the state court's final judgment, it is integral to it and the result in this case would not be different were the bankruptcy court to conduct a *de novo* hearing on the matter,

---

**2.** The Barnhart's also make the facially weak argument that the state court judgment was not final as to the fraud and contract claims because the Colorado Court of Appeals affirmed the trial court on the breach of contract claim and did not reach any other issues on appeal. As the bankruptcy court correctly noted, the Barnharts did not further appeal to the state supreme court; thus, the judgment is final with respect to all issues decided.

given the taped admissions of Mr. Barnhart. Moreover, in computing damages the bankruptcy court is entitled to look to the factual findings underlying a state court judgment given preclusive effect on the issue of liability, as this furthers the purposes of the doctrine to protect parties and the courts from relitigating the same issues and to give full faith and credit to state court judgments. *See generally, Klein v. Commissioner*, 880 F.2d 260, 262 (10th Cir.1989); 28 U.S.C. § 1738. Therefore, I affirm the bankruptcy court's determination as to the nondischargeability of the Barnhart's debt to Northwestern.