ANTHONY L. PENNYBAKER AND BARBARA L. PENNYBAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pennybaker v. Commissioner
Docket No. 28283-91
United States Tax Court
T.C. Memo 1994-303; 1994 Tax Ct. Memo LEXIS 306; 67 T.C.M. (CCH) 3157; June 30, 1994, Filed *306 Decision will be entered for petitioners for 1981 and 1982 and for respondent for 1983, 1984, and 1985. For petitioners: Tom G. Parrott. [1]
For respondent: Donald E. Edwards. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to tax
Year
Deficiency
Sec. 6653(b)
Sec. 6654 Sec. 6661 1981
$ 9,727
$ 4,864
--
--
1982
9,731
[1] 4,866
--
$ 2,372
1983
1,050
[1] 4,865
$ 495
2,314
1984
201
[1] 5,309
--
2,624
1985
--
6,168
93
944
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Mr. and Mrs. Pennybaker filed a timely petition with this Court, asserting that respondent was barred from assessing deficiencies and additions to tax for 1981 and 1982, that respondent erred in determining additions to tax for fraud under section 6653(b), for failure to pay estimated income *307 tax under section 6654, and for substantial understatement of tax under section 6661, and that respondent erred in disallowing capital loss deductions for 1981, 1982, and 1984. Respondent's answer denied petitioners' assertions and alleged that respondent was not barred from assessing deficiencies and additions to tax for 1981 and 1982, because petitioners filed fraudulent returns for those years. Because petitioners did not raise the issue of capital loss deductions at trial or on brief, we deem it conceded. Burbage v. Commissioner, 82 T.C. 546, 547 n.2 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Wolf v. Commissioner, T.C. Memo. 1992-432, affd. 13 F.3d 189 (6th Cir. 1993). On the remaining issues, we hold that: Respondent is barred from assessing any deficiencies or additions to tax for 1981 and 1982; petitioners are liable for fraud additions under section 6653(b) for 1983, 1984, and 1985; petitioners are liable for additions to tax under section 6654 for 1983 and 1985; and petitioners are liable for additions to tax under section 6661 for 1983, 1984, and 1985. *308 FINDINGS OF FACT The parties have stipulated some of the facts, and the stipulations of fact and attached exhibits are incorporated in this opinion. When petitioners filed their petition, they were residents of Norman, Oklahoma. Mr. Pennybaker received a bachelor of science degree in aerospace engineering from the University of Oklahoma. He has been employed by the Federal Aviation Administration (FAA) as an aerospace engineer since 1961. Mrs. Pennybaker does not have a college degree, but she has taken some college courses, including two accounting courses. During the years in issue, Mrs. Pennybaker worked as a receptionist/bookkeeper and as a secretary. While working as a receptionist/bookkeeper, Mrs. Pennybaker prepared paychecks and calculated the amounts of income tax to be withheld from employees' wages. Steven Buford, a salesman for Constitutional Trust Associates, told petitioners that they could reduce their income taxes, and that their estates could avoid estate taxes and probate, if petitioners created a trust using a form of trust indenture sold by Constitutional Trust Associates. Mr. Buford explained to petitioners the requirements of each line of Form 1040 *309 and showed petitioners how a trust's loss was brought forward from Schedule E to the front page of Form 1040. Petitioners spoke to business and professional acquaintances who had created similar trusts with indentures obtained from Constitutional Trust Associates. On August 22, 1980, petitioners paid Constitutional Trust Associates $ 5,500 for assistance in implementing the arrangements described by Mr. Buford, and, on the same day, the Pennybaker Trust was created. Petitioners did not consult an attorney or a certified public accountant before they created the Pennybaker Trust. They relied on representations by Constitutional Trust Associates employees that staff attorneys of Constitutional Trust Associates had prepared the trust indenture. Around the time petitioners created the Pennybaker Trust, Mr. Buford told them that they already had enough income tax withheld for 1980, and that they should file Forms W-4 to stop Federal income taxes from being withheld from their wages. Mr. Pennybaker contacted the FAA payroll office, which instructed him that there would be no further withholding on his wages if he filed Form W-4 with 99 allowances. On August 20, 1980, Mr. Pennybaker *310 filed Form W-4 with the FAA payroll office in accordance with these instructions. On August 22, 1980, after Mrs. Pennybaker referred to an Internal Revenue Service publication to determine how many allowances would eliminate Federal income tax withholding on her wages, she filed with her employer a Form W-4 with 12 allowances. Mr. Pennybaker filed two more Forms W-4 with the FAA, one on January 17, 1983, and another on February 8, 1985. Still believing that he did not need to pay income tax, Mr. Pennybaker claimed "exemption from withholding" on both these forms. Mr. Buford told petitioners to keep track of trust expenses, which he said included all expenses that related to the trust's property, except "the more personal items" -- food, clothing, and personal insurance. For 1980, 1981, and 1982, Constitutional Trust Associates prepared Forms 1041, U.S. Fiduciary Income Tax Return, for the Pennybaker Trust, and Mr. Buford signed as fiduciary. For 1983, Mrs. Pennybaker prepared and signed Form 1041 for the Pennybaker Trust. Although the Pennybaker Trust never engaged in any activity, it deducted "trust expenses", as described by Mr. Buford. The Pennybaker Trust reported the *311 following expenses of the Pennybaker family as deductions for the years in issue: 1981
1982
1983
Interest
$ 2,980
$ 2,662
$ 2,427
Taxes
595
769
717
Charitable deduction
5,404
4,157
4,279
Utilities
1,778
2,587
2,008
Telephone
375
427
425
Vehicle expense
3,634
4,001
4,396
Dues and subscriptions
256
329
691
Medical expense
1,893
1,334
1,369
Office expense
577
932
390
Professional fees
120
300
Bank charges
12
Property repairs and maintenance
2,686
1,181
1,670
Miscellaneous
286
10
22
[1] Depreciation 14,548
16,180
15,278
Supplies
584
992
1,130
Insurance
369
404
304
Education expense
2,706
3,163
3,497
Total 38,683
39,248
38,903
On 1981, 1982, and 1983 Forms 1041, the Pennybaker Trust also reported small amounts of interest or dividend income, resulting in reported losses of $ 38,525, $ 38,974, and $ 37,195, respectively. For 1980, the Pennybaker Trust reported a loss of $ 17,735. The Pennybaker Trust held the Pennybaker family's assets and paid the family's bills. The Pennybaker Trust had no business purpose or activity. The personal expenses *312 of the Pennybaker family were reported as trust losses, and the trust "losses" were used on petitioners' timely filed returns to reduce their taxable income for 1980 and 1982, and to eliminate their taxable income for 1981. Petitioners filed their 1980 Form 1040 before April 15, 1981, their 1981 Form 1040 on May 14, 1982, and their 1982 Form 1040 on June 6, 1983. Because petitioners believed that the Pennybaker Trust was a legitimate method to avoid paying Federal income tax, they included the losses reported by the Pennybaker Trust on their 1980, 1981, and 1982 returns. After deducting losses from the Pennybaker Trust, petitioners reported Federal income taxes, Federal income taxes withheld, and refunds as follows: 1980
1981
1982
Federal income tax
$ 2,018
-0-
$ 117
Federal income tax withheld
4,537
0
426
Refunded
2,519
0
309
On March 19, 1990, when petitioners belatedly filed their 1983 Form 1040, they no longer believed that the Pennybaker Trust was a legitimate method to avoid paying income tax, and they never reported the 1983 trust loss on their individual income tax returns. Before petitioners' 1983 Form 1040 was due, petitioners met Bruce Gilliam, *313 who expressed the view that individuals did not have to file Federal tax returns or pay Federal income tax. Mr. Gilliam was the leader and operator of a tax protest organization called Income Tax X (ITX). Through ITX, Mr. Gilliam supplied petitioners with information supporting these tax protester views, including an instruction manual and audio tapes. Mr. Pennybaker also bought books and listened to radio broadcasts that propounded the same views. Petitioners accepted these views and became convinced that, because the Federal income tax laws were invalid, they did not need to file Federal tax returns or pay Federal income tax. Having become convinced these views were valid, petitioners stopped using the Pennybaker Trust, did not file trust returns for 1984 and 1985, or timely file individual returns for 1983, 1984, and 1985. Instead, they gave Mr. Gilliam power of attorney to file claims for refunds of tax on their behalf. On April 9, 1984, Mr. Gilliam, on behalf of petitioners, filed Form 1040X, requesting a refund of petitioners' 1980 Federal income taxes, and filed Form 843, [2] requesting a refund of income tax withheld from Mrs. Pennybaker's 1983 wages. *314 In 1985, the FAA payroll office decided to disregard the Forms W-4 that Mr. Pennybaker had filed and began to withhold Federal income tax from his wages. Mr. Pennybaker, on the advice of Mr. Gilliam, tried to convince the FAA payroll office to honor the Forms W-4 that he had filed. First, Mr. Pennybaker sent letters to the FAA payroll office. Then, because the FAA payroll office continued to withhold Federal income tax, he filed a pro se suit in State court against two individuals working in the FAA payroll office. [3]
On January 29, 1990, as part of a plea bargain arrangement, Mr. Pennybaker pled guilty to three misdemeanor counts of willful failure to file income tax returns under section 7203 for 1983, 1984, and 1985. On March 19, 1990, prior to Mr. Pennybaker's sentencing, petitioners filed joint Federal income tax returns for 1983, 1984, and 1985. Mr. Pennybaker was sentenced to 6 months in a halfway house and 3 years' probation, and was required *315 to pay $ 75. OPINION Petitioners were duped, first by a tax shelter promoter, and then by the leader of a tax protest organization. The tax shelter promoter convinced petitioners that they would avoid income tax by creating a trust to pay their personal expenses and then deducting the trust's "losses". They were mistaken. The leader of the tax protest organization convinced petitioners that individuals need not file Federal income tax returns or pay Federal income tax because the Federal income tax laws are invalid. Petitioners were again mistaken. Although both mistakes led petitioners to believe that they were not liable for income taxes, the different theories underlying their belief circumscribe our holdings on the fraud issue over the various years before us. Issue 1(a) -- Statute of Limitations
Generally, respondent must assess tax within 3 years after the later of the date the return was due, without extensions, or the date the return was actually filed. Sec. 6501. If a taxpayer proves that the 3-year period of limitations has expired, the Commissioner has the burden of proving that the asserted exception to the statute of limitations applies. Reis v. Commissioner, 1 T.C. 9, 12 (1942), *316 affd. 142 F.2d 900 (6th Cir. 1944). Petitioners filed their income tax returns for 1981 and 1982 on May 14, 1982, and June 6, 1983, respectively. Respondent mailed the statutory notice of deficiency on September 5, 1991, well after expiration of the normal periods for assessment provided in section 6501(a). Respondent has relied on her determinations of fraud to support her position that the statute of limitations does not bar assessments of tax for 1981 and 1982. [4] Respondent "bears the burden of proving fraud by clear and convincing evidence." Heyen v. United States, 945 F.2d 359, 364 (10th Cir. 1991). If respondent proves that petitioners filed a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a court proceeding commenced, at any time. Sec. 6501(c). The definition of fraud for the purpose of extending the period of limitations under section 6501(c) is the same as the definition of fraud for the purpose of imposing an addition to tax under section 6653(b). Schaffer v. Commissioner, 779 F.2d 849, 857 (2d Cir. 1985), affg. in part and remanding Mandina v. Commissioner, T.C. Memo. 1982-34. *317 Because we have found, for the purpose of imposing additions to tax under 6653(b), that petitioners did not file fraudulent returns for 1981 and 1982 (infra pp. 15-16), respondent is barred from assessing tax for those years. Issue 2(a) Section 6653(b) Additions -- Fraud Generally
When the Commissioner *318 alleges that a taxpayer is liable for an addition to tax for fraud, the Commissioner must establish (1) an underpayment of tax for each year in issue and (2) a specific intent to evade a tax believed to be owed for each year in issue. Sec. 6501(c); Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). We do not impute or presume fraud, and we do not find fraud on the basis of circumstances that do no more than create a suspicion of fraud. Green v. Commissioner, 66 T.C. 538, 550 (1976). Although respondent is not required to establish fraud beyond a reasonable doubt, the "clear and convincing" standard requires that she establish fraud by more than a preponderance of the evidence. Kellett v. Commissioner, 5 T.C. 608, 616 (1945). "Fraud means 'actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.'" Zell v. Commissioner, 763 F.2d 1139, 1142-1143 (10th Cir. 1985) (quoting Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939)), *319 affg. T.C. Memo. 1984-152. A taxpayer's negligence, whether slight or gross, is not enough to prove fraud, Kellett v. Commissioner, supra at 618, and tax protester arguments, although meritless, frivolous, wrongheaded, and even stupid, do not necessarily amount to fraud, without more, Kotmair v. Commissioner, 86 T.C. 1253, 1262 (1986). Although a taxpayer's failure to file a return is prima facie evidence of negligence, Emmons v. Commissioner, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50 (5th Cir. 1990), it is insufficient to prove fraud, Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Even willful failure to file a return ordinarily does not justify a finding that the taxpayer intended to evade tax. Zell v. Commissioner, supra at 1146; Bagby v. Commissioner, 102 T.C.    ,     (1994) (slip op. at 17). When a taxpayer fails to file a return, the taxpayer's intent to evade tax must manifest itself in some affirmative act of concealment or misrepresentation. *320 Zell v. Commissioner, supra at 1146. The elements of criminal tax evasion under section 7201 are identical to the elements of civil tax fraud under section 6653(b). Klein v. Commissioner, 880 F.2d 260, 262 n.2 (10th Cir. 1989), affg. T.C. Memo. 1984-392; Niedringhaus v. Commissioner, 99 T.C. 202, 217 (1992). Because a willful attempt to evade or defeat tax, as used in section 7201, encompasses all the elements of fraud, [5] as used in section 6653(b), the criminal standard established by the Supreme Court in Cheek v. United States, 498 U.S. 192 (1991), vacating and remanding 882 F.2d 1263 (7th Cir. 1989), is the appropriate standard for determining civil fraud under section 6653(b). Niedringhaus v. Commissioner, supra at 216-217; Roth v. Commissioner, T.C. Memo. 1992-563. *321 In Cheek v. United States, supra, the taxpayer claimed that he honestly believed that the Internal Revenue Code did not treat wages as income, id. at 202, but the trial court instructed the jury that an honest but unreasonable belief was not a defense and would not negate willfulness, id. at 197. In vacating and remanding the taxpayer's conviction, the Supreme Court held the instruction erroneous and stated that the Government would not have carried its burden of proving willfulness if the jury had credited the taxpayer's claims that he misunderstood the law and had believed that he had not violated it, whether or not that misunderstanding or belief was objectively reasonable. Id. at 202. [6] Accordingly, a good-faith misunderstanding of the Internal Revenue Code may be a defense to criminal prosecution under section 7201, id. at 203, and to civil additions to tax under section 6653(b), Niedringhaus v. Commissioner, supra 217. *322 The taxpayer in Cheek v. United States, supra, also claimed that he honestly believed that the income tax was unconstitutional. Comparing this assertion to his previously claimed belief that the income tax did not apply to his wages, the Supreme Court stated that "Claims that some of the provisions of the tax code are unconstitutional are submissions of a different order", id. at 205, and held that the taxpayer's "views about the validity of the tax statutes are irrelevant to the issue of willfulness" under section 7201, id. at 206. As a result, a good-faith belief that the Internal Revenue Code is unconstitutional or otherwise invalid provides no defense to criminal prosecution under section 7201, id. at 613; see United States v. Cheek, 3 F.3d 1057, 1063 (7th Cir. 1993), nor to civil additions to tax under section 6653(b), Niedringhaus v. Commissioner, supra at 219. Whatever the grounds for the distinction between beliefs that the tax laws are inapplicable and beliefs, of equal sincerity, that those laws are invalid, *323 [7] the Supreme Court has fashioned a pair of bright-line rules for us to apply. See Cheek v. United States, supra. To apply these rules, we look to the theories underlying petitioners' beliefs that they did not owe any Federal income tax. We disregard beliefs based on theories that the income tax laws are invalid, but weigh the sincerity of beliefs based on theories that the income tax laws do not apply in the circumstances of the particular case. [8]
*324 Issue 2(b) Fraud -- 1981 and 1982
Although it borders on the incredible that petitioners thought that such a simple plan as the Constitutional Trust Associates arrangement would be efficacious, we think that their apparently honest assertion casts significant doubt on respondent's view of their intent. Petitioners' credible testimony and consistent actions persuade us that it is possible, perhaps even likely, that petitioners honestly, and in good faith, believed that the Pennybaker Trust would properly eliminate their income tax liabilities. Respondent points to the Pennybaker Trust and petitioners' Forms W-4 as evidence of petitioners' fraudulent intent to evade tax. However, we believe that petitioners created the Pennybaker Trust with the honest and good faith belief that the pass-through of trust expenses was a legitimate method to avoid tax. Because petitioners thought that the Pennybaker Trust was a legitimate method to avoid income tax, they completed Forms W-4 [9] with the belief that they would not owe any income tax. Although in other circumstances filing a false Form W-4 may be a badge of fraud, see Niedringhaus v. Commissioner, supra at 211, *325 we do not find that petitioners' Forms W-4, completed and filed in good faith during 1980, are evidence of fraud. Although a reasonable person would not have believed the claims of the trust promoter, petitioners did so believe, and they timely filed returns for 1981 and 1982 under that mistaken belief of law. Because respondent issued the statutory notice of deficiency for 1981 and 1982 more than 3 years after petitioners filed returns for those years and did not prove that petitioners intended to evade tax, respondent is barred from assessing tax for 1981 and 1982. Issue 2(c) Fraud -- 1983, 1984, and 1985
An "underpayment" for purposes of section 6653 is equal to a "deficiency" as defined by section 6211, except that the income tax imposed is not reduced by the tax shown on a return filed *326 after its due date. Sec. 6653(c). If a taxpayer does not file a timely income tax return, the underpayment is equal to the total income tax for the year. Sec. 301.6653-1(c)(1)(ii), Proced. & Admin. Regs. Because petitioners filed their 1983, 1984, and 1985 returns after their due dates and income taxes were due for each of those years, respondent has proven an underpayment for each of those years. In early 1984, when petitioners came to believe that the income tax laws were invalid, they stopped using the Pennybaker Trust to pay their personal expenses. Although petitioners caused the Pennybaker Trust to file its 1983 return, they did not cause it to file 1984 or 1985 returns. Once petitioners stopped following the instructions of Constitutional Trusts Associates on the use of the Pennybaker Trust and stopped causing the trust to file returns, their personal and financial affairs no longer conformed with their belief of how trust "losses" would offset other income. Although petitioners may have continued to believe that a trust would allow them to reduce income tax if it were operated in accordance with instructions of Constitutional Trust Associates, petitioners stopped using *327 the Pennybaker Trust as they had been instructed and abandoned their belief that the Pennybaker Trust would reduce their income tax. Petitioners failed to file timely returns for 1983, 1984, and 1985. At the times these returns were due, petitioners believed that they were not liable for income tax, and that they need not file returns, believing the theory that the Federal income tax laws were invalid. Their belief in this theory is irrelevant to our determination of fraud. Cheek v. United States, 498 U.S. at 206; Niedringhaus v. Commissioner, 99 T.C. at 219. For 1983, petitioners' actions indicate that the theory underlying their belief that they did not owe tax was in a state of transition. The basis of petitioners' theory was shifting from the efficacy of the Pennybaker Trust to the invalidity of the tax laws. Although petitioners caused the Pennybaker Trust to pay their personal expenses during 1983, and to file a timely return for 1983, petitioners did not complete the Constitutional Trust Association arrangement by filing their individual return for 1983. Petitioners did not testify why they caused the Pennybaker *328 Trust to file a return for 1983, but they did testify that they did not file their 1983 individual tax return because they believed that the income tax laws were invalid. We infer that petitioners might have caused the Pennybaker Trust to file a trust return for 1983 because they believed that, although the income tax laws were invalid as to individuals, the income tax laws were valid as to trusts, and not because they believed that the trust loss would shelter their income. This inference is supported by Form 843 filed before the trust return was filed. The Form 843 was filed as a claim for refund of income tax withheld from 1983 wages, but the explanation for why the claim should be allowed did not refer to the Pennybaker Trust. Petitioners' failure to complete the trust arrangement by filing a timely individual return, and their filing of an improper claim for refund of 1983 withholdings, lead us to find that petitioners had abandoned their belief in the Pennybaker Trust and that they knew they owed tax for 1983. Even if petitioners believed the Pennybaker Trust was efficacious to reduce their taxable income, petitioners did not testify that they believed they would owe no *329 tax if they had relied solely on the Pennybaker Trust, and the evidence shows that tax would have been owed. On the 1983 Form 1040 late-filed on March 19, 1990, petitioners reported adjusted gross income of $ 51,566 and exemptions of $ 5,000. The Pennybaker Trust "loss" that would have offset their income was only $ 37,195 and would have resulted in taxable income and tax liability for 1983. For 1984 and 1985, petitioners did not use the Pennybaker Trust and knew that there would be no pass-through "losses" from the Pennybaker Trust to offset their income. If we disregard petitioners' mistaken belief that the Federal income tax laws were unconstitutional, petitioners had no reason to believe that they did not owe any income tax. They had previously filed returns, knew that wages were taxable income, and knew that, without "losses" from the Pennybaker Trust, they owed tax under the provisions of the Internal Revenue Code as written. Like the taxpayers in Cheek v. United States, supra, and Niedringhaus v. Commissioner, supra, petitioners' willful refusal to comply with the duties imposed on them by law imposes *330 upon them the burden of accepting the risk of being wrong. Cheek v. United States, supra at 206. Notwithstanding that petitioners knew they owed tax for 1983, 1984, and 1985, they did not file income tax returns for those years until after Mr. Pennybaker had pled guilty to, but before he was sentenced for, willful failure to file returns. Although Mr. Pennybaker admitted that he willfully failed to file returns pursuant to section 7203, willful failure to file is not sufficient to prove fraud. Zell v. Commissioner, 763 F.2d at 1146. A taxpayer must commit some affirmative act indicating that he failed to file returns with the intent to evade tax. Id. at 1146 (fraud upheld for 1978 and 1979 based on a fraudulent act in 1976); cf. Stoltzfus v. United States, 398 F.2d 1002, 1004-1005 (3d Cir. 1968) (requiring a "convincing affirmative indication" of the taxpayer's intent). In 1984, petitioners stopped using the Pennybaker Trust. On Form 843, they filed a claim for refund of their 1980 income tax, and, on Form 1040X, Mrs. Pennybaker filed a claim for *331 refund of the Federal income tax withheld from her 1983 wages. It is not clear from the face of the claim forms whether petitioners filed the claims relying on the inapplicability of the law, on the invalidity of the law, or on both. [10] We find it incredible that petitioners would have believed that the income tax laws did not tax wages, and it is irrelevant that petitioners believed that the Sixteenth Amendment did not permit individuals' income to be taxed or that the income tax laws were otherwise invalid. *332 Because the Form 1040X filed for 1980 is not sufficiently related to 1983, 1984, and 1985, we do not find that the filing of that form indicates an intent to evade tax for the years in issue. Because Form 843 is clearly marked as an improper form on which to claim a refund of income tax, we find that petitioners filed Form 843 for 1983 with the intent to mislead respondent into refunding income tax withheld on Mrs. Pennybaker's 1983 wages while concealing their 1983 income. See Spies v. United States, 317 U.S. 492, 499 (1943). We find that the filing of Form 843 for 1983 indicates an intent to evade tax, and we consider it in the circumstances of 1983, 1984, and 1985. After petitioners abandoned their use of the Pennybaker Trust during 1984, they knew that the tax laws provided for taxation of their income, but petitioners continued to block the collection of tax by relying on Forms W-4 that provided for inadequate withholding. In fact, on February 8, 1985, Mr. Pennybaker filed another Form W-4 with his employer misrepresenting that he was exempt from withholding. Unlike the Forms W-4 that he filed in 1980 and 1983, Mr. Pennybaker did not file *333 the 1985 Form W-4 based on a mistake of law. Cf. 1980 Forms W-4, supra p. 15. Mr. Pennybaker also wrote letters to, and initiated a lawsuit against, employees in the FAA payroll office to stop them from withholding Federal income tax from his wages. The lawsuit was intended to obstruct the collection of tax. Petitioners' actions to frustrate collection of tax were based on petitioners' belief that the Federal income tax laws were unconstitutional, an irrelevant fact. Cheek v. United States, 498 U.S. at 206. Petitioners have offered no alternative explanation for their actions, and we find that filing a false Form W-4 and obstructing the collection of tax are objective indicia of petitioners' intent to evade tax, within the meaning of the rule set forth by the Supreme Court in Cheek v. United States, supra, as applied in Niedringhaus v. Commissioner, 99 T.C. at 211. Although petitioners cooperated with respondent's agents after Mr. Pennybaker pled guilty to willful failure to file, repentance does not purge prior fraud, Badaracco v. Commissioner, 464 U.S. 386, 394 (1984), *334 and, after considering the totality of the circumstances, we find that petitioners are liable for additions to tax under section 6653(b) for 1983, 1984, and 1985. Issue 3 Section 6654 Additions -- Failure To Pay Estimated Tax
For 1983 and 1985, respondent determined additions to tax for failure to pay estimated tax under section 6654. If there is an underpayment of estimated tax for 1983 or 1985, section 6654(a) imposes an addition to tax equal to the interest rate established under section 6621 [11] applied to the amount of the underpayment for the period of the underpayment. This addition to tax is imposed regardless of reasonable cause or extenuating circumstances. Dodge v. Commissioner, 96 T.C. 172, 183 (1991), affd. on this issue 981 F.2d 350 (8th Cir. 1992); Grosshandler v. Commissioner, 75 T.C. at 21. The Commissioner's determinations *335 of additions to tax under 6654 are presumed to be correct, and the taxpayer bears the burden of proving that he is not liable for those additions. Rule 142(a). Petitioners did not offer any evidence that they paid estimated tax for 1983 or 1985. Respondent's determinations of additions to tax under section 6654 will be sustained for 1983 and 1985. Issue 4 Section 6661 Additions -- Substantial Understatement
For all 5 years in issue, respondent determined additions to tax for substantial understatements under section 6661, but we have determined that the period of limitations has expired for 1981 and 1982. If there is a substantial understatement of income tax for 1983, 1984, or 1985, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to the understatement for that year. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown or $ 5,000. Sec. 6661(b)(1)(A). The Commissioner's determinations of the additions to tax for substantial understatement are presumed to be correct, and the taxpayer bears *336 the burden of proving that he is not liable for those additions. Rule 142(a). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return, but the understatement will be reduced if the taxpayer either had substantial authority for, or adequately disclosed the relevant facts affecting, the tax treatment shown on the return. Sec. 6661(b)(2). Because petitioners did not file returns for 1983, 1984, and 1985 until the conclusion of respondent's investigation, they obviously did not adequately disclose the facts affecting the tax treatment of their income, or of the Pennybaker Trust "losses", in their returns or in statements attached to their returns. See Egner v. Commissioner, T.C. Memo. 1989-247, affd. without published opinion 936 F.2d 582 (10th Cir. 1991). It is also obvious that petitioners did not have any authority for the understatements of tax for 1983, 1984, or 1985. If a taxpayer shows that there was reasonable cause for the understatement and that he acted in good faith, the Secretary may waive all or any part of the addition to tax under *337 section 6661(a). Sec. 6661(c). The taxpayer ordinarily must prove that the Secretary abused his discretion by denying the waiver of the section 6661(a) addition to tax. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). To meet this burden the taxpayer ordinarily must show (1) that he requested a waiver under section 6661(c), Klieger v. Commissioner, T.C. Memo. 1992-734, (2) that the Secretary refused the request, Klieger v. Commissioner, supra, and (3) that reasonable cause and good faith are so clear that the Secretary's refusal to waive the addition to tax was arbitrary, capricious, or without sound basis in fact, Mailman v. Commissioner, supra at 1084. Inasmuch as petitioners did not provide any evidence that they had requested a waiver, the Secretary had no occasion to deny their request, and in any event, petitioners failed to show reasonable cause for the understatements. We therefore sustain respondent's determinations of section 6661(a) additions to tax for 1983, 1984, and 1985. To give effect to the foregoing, Decision will be entered *338 for petitioners for 1981 and 1982 and for respondent for 1983, 1984, and 1985. Footnotes
1. After trying and briefing the case, Mr. Parrott died.↩
1. Plus 50 percent of the interest payable on the respective deficiencies.↩
1. Includes depreciation of petitioners' personal residence and vehicles.↩
2. The first line of Form 843 warns the person completing the form that "If your claim is for an overpayment of income taxes, do NOT use this form (see Instructions)". The instructions again warn the person completing the form "NOT" to use Form 843 for overpayment of income tax and instruct him to use Form 1040X. Under the explanation why the claim should be allowed, Mr. Gilliam, on behalf of Mrs. Pennybaker, warned the person receiving the form that failure to refund the amount of income tax withheld "could bring criminal penalties."↩
3. The suit was removed to Federal court, where it was dismissed.↩
4. Although respondent properly pleaded the fraud exception to statute of limitations in the answer, respondent did not address the statute of limitations, as such, on opening brief. Respondent did not plead any other exception to the statute of limitations. We are satisfied that both parties understood that we were to weigh respondent's evidence of, and arguments for a finding of, fraud in deciding both the statute of limitations issue under sec. 6501(c) and the additions to tax under 6653(b). We do not treat the failure of respondent's opening brief to discuss specifically the statute of limitations as a concession of the issue. See Corrigan v. Commissioner, T.C. Memo. 1994-31↩.
5. "The standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'" Cheek v. United States, 498 U.S. 192, 201 (1991) (quoting United States v. Pomponio, 429 U.S. 10, 12 (1976), and United States v. Bishop, 412 U.S. 346, 360↩ (1973)).
6. Following the remand, a second jury convicted Cheek, and the conviction was upheld on appeal. See United States v. Cheek, 3 F.3d 1057↩ (7th Cir. 1993).
7. Compare the concurring opinion of Justice Scalia, Cheek v. United States, 498 U.S. 192, 207 (1991), with the dissent of Justice Blackmun, joined by Justice Marshall, id.↩ at 209. Justice Scalia and the dissenters are united in their skepticism of the psychological validity and practical effects of the majority's decision to open the door to good faith, but mistaken, claims of avoidance, but not to entertain claims, which, if valid, would strike at the foundations of Government by rendering it impotent to raise money to pay for its activities.
8. Respondent does not credit that any of petitioners' asserted beliefs were held in good faith, and she has not briefed the issue of how the rules of Cheek v. United States, supra↩, should be applied to this case.
9. It is irrelevant whether the forms were completed claiming 12 allowances, 99 allowances, or exemption from withholding. Petitioners filed the forms intending to have no Federal income tax withheld from their wages.↩
10. According to Form 843 for 1983 filed by Mr. Gilliam on behalf of Mrs. Pennybaker, "Mrs. Pennybaker did not have taxable 'income' as defined by law" and was therefore not required to file Form 1040. Mr. Gilliam referred to "Supreme Court decisions: United States vs Conners; United States vs Clark; Hale vs Henkel; Edwards vs Keith". According to Form 1040X for 1980 filed by Mr. Gilliam on behalf of petitioners, petitioners' income was not taxable. Mr. Gilliam referred to common law and "Supreme Court decisions which have never been over turned: United States vs Pierce; Merchant's Loan & Trust Co. vs Smietanka; Eisner vs Macomber; Keasbey & Mattison Co. vs Rothensies; Hilgenberg vs United States; M.E. Blatt Co. vs United States; and * * * Brushaber vs Union Pacific Railroad↩". We have been able to identify some of these decisions, but, because Mr. Gilliam did not include specific citations, we have not been able to identify all of them. Of the decisions that we have identified, it is not clear why he was referring to some of them.
11. The underpayment rate for 1985 and the applicable annual rate for 1986 and 1987.↩