EMMA TAYLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THAD TAYLOR, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket Nos. 17521-92, 17558-92
United States Tax Court
T.C. Memo 1995-269; 1995 Tax Ct. Memo LEXIS 270; 69 T.C.M. (CCH) 2932; June 19, 1995, Filed *270 Decisions will be entered under Rule 155. For petitioner, Emma Taylor: James Clinton Garland. For petitioner, Thad Taylor, Jr.: Kenneth R. Mourton. For respondent: Kirk S. Chaberski. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1982
$ 121,615
$ 60,808
[1]
$ 30,404
1983
131,927
65,964
[1]
32,982
1984
114,093
57,047
[1]
28,523
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues for decision are: 1. Whether petitioners are liable for additions to tax for civil fraud pursuant to section 6653(b)(1) and (2). We hold that they are. 2. In the alternative to fraud, whether petitioners are liable for additions to tax attributable to negligence. Since we hold for respondent on the issue of fraud, we need not address this issue. 3. Whether petitioners *271 are liable for an addition to tax for substantial understatement of income tax pursuant to section 6661 for each of the taxable years 1982 through 1984. We hold that they are. 4. Whether the statute of limitations on assessment of tax due from petitioners for the 1982 taxable year remained open on the date the notice of deficiency was issued due to the fraud exception to the normal 3-year statute of limitations. We hold that it did. 5. Whether petitioner Thad Taylor, Jr., qualifies as an "innocent spouse" under the provisions of section 6013(e). We hold that he does not. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time they filed their petitions, petitioners resided as husband and wife in Tulsa, Oklahoma. Petitioners had 2 minor children during the years at issue. [1]
Petitioner graduated from Prairie View College *272 and, after attending dental school, received his degree in dentistry and his license to practice in 1963. Emma Taylor holds a bachelor of science degree in home economics education. She has no specific training in accounting or bookkeeping. During the years at issue, petitioner was a practicing dentist. However, prior to enrolling in dental school, petitioner was an infantry captain in the U.S. Army, where his duties included counting and disbursing payroll funds each month to over 300 soldiers under his command. During the years in issue, Emma Taylor worked part-time at petitioner's dental office. Petitioner operated his dental business as a sole proprietorship from 1963 until the business was incorporated in 1990. However, during all of the years in issue, petitioner employed "associate dentists" who performed dental services at his dental office. Petitioner employed 6 associate dentists during 1982, 8 during 1983, and 9 during 1984. The normal employment arrangement between petitioner and an associate dentist required that petitioner pay the associate an agreed upon percentage of the total fee billed for the service performed by the associate. The patient and/or insurance *273 company was instructed to write a check to the associate, the associate endorsed each check to petitioner, and petitioner then paid the associate the agreed-upon percentage on a regular basis. During the years at issue, a dental hygienist worked with petitioner under a percentage fee arrangement similar to the arrangement that petitioner maintained with the associate dentists. Unlike the associate dentists, the insurance companies would not issue checks directly to a dental hygienist for work which she performed. Rather, those checks were issued in the name of petitioner. The insurance companies would, therefore, issue Forms 1099 to petitioner for the amounts paid. These gross receipts, generated by the work of the dental hygienist, were properly included on petitioners' joint Federal income tax returns for each of the taxable years here at issue. Petitioner also employed 5-7 individuals, in addition to the associate dentists, the dental hygienist, and Emma Taylor, during the years at issue. These included an office manager, a receptionist, an insurance clerk, and 3-4 dental assistants. Petitioner's dental business experienced steady growth during the years at issue. All *274 records for the business were kept in "receipt books". Each payment that came into the office, whether by cash or check, was entered in the receipt books. The receipt books were the sole records kept by petitioner's dental business which accurately reflected gross receipts. Petitioner conceived of and instituted the receipt book method of tracking gross receipts for his dental business. Petitioner utilized this method of tracking gross receipts from the inception of his business through each of the years at issue. Petitioner had the ultimate authority over the records kept by his office. As part of her duties in petitioner's office, Emma Taylor recorded business gross receipts in the receipt books. Petitioner filed a Schedule C relating to the dental business for each of the taxable years 1982 through 1984. Each such Schedule C omits all income received from each of the associate dentists, yet it reflects a deduction for "commissions" in the collective amount paid by petitioner's dental business to the associate dentists each year. Petitioners realized income from sources other than the dental business; however, the dental business was their primary source of income during *275 each of the years in issue. Petitioner reported net business losses for the year 1982 of $ 11,217, for 1983 of $ 28,055 and for 1984 of $ 17,411. Nonetheless, petitioner testified that his practice experienced steady growth over the years at issue. Petitioners' Federal income tax returns were prepared by a real estate broker/income tax preparer. Petitioners did not provide the receipt books to their tax return preparer for preparation of each of the returns at issue. Rather, petitioners prepared handwritten summaries from the receipt books and other business records and provided only those summaries to the return preparer. These handwritten sheets were written by Emma Taylor; however, petitioner assisted in the compilation of the information needed to create the summary sheets.
While the gross receipts generated by each associate dentist were recorded in the receipt books, petitioners failed to include these gross receipts on the summary sheets provided to the return preparer. These amounts were omitted, for each of the years at issue, from the Schedule C filed by petitioner relating to the dental practice. On their 1982, 1983, and 1984 joint Federal income tax returns, petitioners *276 offset the claimed losses from the dental business against other income, consisting mainly of interest income, and reported total tax due of $ 5,016, $ 0 and $ 0. Petitioners omitted interest income of $ 2,678 received from various individuals from their 1984 joint Federal income tax return. Petitioners omitted capital gains from the sale of realty of $ 2,015 and $ 7,673 on their 1982 and 1983 joint Federal income tax returns. Petitioner testified at trial that petitioners had always led an unpretentious life. Petitioners purchased many assets during the years at issue and also made payments to Emma Taylor's mother of $ 750 per month for the entire 3-year period. The purchases made by petitioners during the years at issue were paid for in cash or by check. Petitioners purchased a boat for $ 14,500, a Jeep Wagoneer for $ 16,549.50, a 1984 BMW, a lake house for $ 60,000, farmland for approximately $ 30,000, a house trailer for $ 18,000, and a building for $ 62,335. Petitioners further spent $ 54,000 for remodeling of their lake house which was separate and apart from their residence. Petitioners also periodically employed a maid during all of the years at issue. Petitioner *277 has filed a Federal income tax return for more than 25 years. Petitioner claimed at trial that he has never understood Federal income tax returns, despite his having signed them. Petitioner was unable at trial to explain exactly what he did not understand about the Federal income tax forms. Petitioner indicated that he made no effort to educate himself regarding accounting or bookkeeping. During October or November of 1985, the Internal Revenue Service began examining petitioners' Federal income tax liabilities for the years at issue. On November 7, 1985, a revenue agent served an information document request on petitioners. The request specifically asked that petitioners provide the receipt books. In addition to the formal written request, the revenue agent orally requested the receipt books from both petitioners on at least one occasion at the dental office. Petitioners repeatedly told the revenue agent that at least some of the requested receipt books had been lost in a flood. Petitioners located and had available those few receipt books which had been affected by the flood "a month or so" after petitioners' first meeting with the revenue agent. All such affected receipt *278 books remained legible. Neither petitioner ever told the revenue agent that all the receipt books were available. The case was eventually referred to the Internal Revenue Service Criminal Investigation Division for investigation during 1986. Due to petitioners' failure to provide any of the requested receipt books, the revenue agent was forced to use the bank deposits method to determine petitioners' true income for each of the years at issue. During his initial interview with Emma Taylor on May 1, 1986, the special agent asked Emma Taylor to provide the receipt books from the dental business for the periods here at issue. Emma Taylor testified at trial that all records were made available to the Internal Revenue Service Agent except for the receipt books that were damaged in a flood. The facts, however, do not support this testimony, for even the receipt books not alleged to have been damaged in the flood were not turned over to the agent. A formal summons was personally served on petitioner seeking the receipt books of petitioner's dental business for each of the periods at issue. Petitioners did not produce the receipt books until the summons was enforced by the United *279 States District Court in Oklahoma. The receipt books ultimately were turned over to the Service pursuant to the Order of the District Court. Petitioners were both indicted before the U.S. District Court for the Northern District of Oklahoma, each charged with violation of section 7201 for the tax years 1982, 1983, and 1984. Emma Taylor entered a plea of guilty before the U.S. District Court for the Northern District of Oklahoma to violation of section 7206(1) for willfully filing a false 1984 Federal income tax return. In exchange for the guilty plea of Emma Taylor, the indictment against both petitioners was dismissed. At trial, Emma Taylor attempted to recant her guilty plea, testifying that she had pleaded guilty only because of a lack of funds with which to pay her attorneys. Petitioners had deposits in excess of $ 400,000 in banks and in certificates of deposit during 1980. These deposits represented savings from past profits of the dental business and interest therefrom. Petitioners' overall cash assets in bank accounts and certificates of deposit increased over the period at issue. Petitioners had 12 active bank accounts during 1982, 17 during 1983, and 15 during 1984. *280 Petitioner testified that petitioners had fewer than 10 bank accounts during the years in issue. Petitioners received no monetary gifts, inheritances, or devises during the years in issue. Other than a small mortgage on realty, petitioners neither borrowed nor owed any money during 1982-84. The dental business was petitioners' primary source of income during all relevant periods. During the years in issue, petitioners resided in a 3,800 square foot house, which has a four car garage. Both petitioners testified that they were not concerned with whether the dental business was turning a profit at any time during the 3-year period before the Court. OPINION Petitioners have conceded that they omitted from their 1982, 1983, and 1984 joint Federal income tax returns gross receipts from petitioner's dental business in excess of $ 240,000 for each of those years and that they are liable for income tax deficiencies for 1982, 1983, and 1984 in the amounts of $ 121,615, $ 131,927, and $ 114,093. However, they have challenged the additions to tax for fraud determined by the Commissioner. Fraud
Respondent has the burden of proving, by clear and convincing evidence, that an underpayment *281 exists for each of the years at issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). For purposes of section 6653(b)(1), respondent need not prove the precise amount of the underpayment resulting from fraud, only that some part of the underpayment of tax for each year at issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Petitioners concede that there was unreported income and a resulting underpayment for each of the years at issue. We accordingly must decide if any part of the underpayments was due to fraud. Hebrank v. Commissioner, 81 T.C. 640 (1983). The existence of fraud is a question of fact to be resolved upon *282 consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). However, fraud may be proved by circumstantial evidence and reasonably inferred from the facts, because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983). A taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Our *283 conclusion must be reached not on isolated pieces of testimony, but rather on the whole record. Kellett v. Commissioner, 5 T.C. 608, 616 (1945). Courts have relied on several indicia of fraud when considering the section 6653(b) addition to tax. Although no single factor may conclusively establish fraud, the existence of several indicia may be persuasive circumstantial evidence of such. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. Circumstantial evidence which may give rise to a finding of fraudulent intent includes: (1) Understating income; (2) keeping inadequate or no records; (3) failing to file tax returns; (4) maintaining implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with tax authorities; (7) filing false Forms W-4; (8) failing to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal an illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), *284 affg. T.C. Memo. 1984-601; see Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990). These "badges of fraud" are nonexclusive. Miller v. Commissioner, 94 T.C. 316, 334 (1990). Both the taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. United States v. Murdock, 290 U.S. 389, 395 (1933); Spies v. United States, supra at 497; Plunkett v. Commissioner, supra at 303. When a joint return is filed, the Government must establish fraud for both the husband and wife. Sec. 301.6653-1(f), Proced. & Adm. Regs. It is necessary for respondent to establish that some part of the underpayment was due to fraud of both spouses, if she seeks to hold both spouses liable for additions to tax for fraud. Sec. 6653(b); Stone v. Commissioner, supra.
While the mere understatement of income alone is not sufficient to prove fraud, the consistent and substantial understatement of income is, of itself, strong evidence *285 of fraud. Holland v. United States, 348 U.S. 121, 139 (1954); Marcus v. Commissioner, 70 T.C. 562, 577 (1978). Petitioners herein admit that they underreported their total tax due for all of the years in issue. In fact, petitioners reported less than 5 percent of the tax due on their joint Federal income tax returns for each of the years at issue. The understatements of income tax are the direct result of petitioners' omission of substantial gross receipts from the dental business of petitioner. We find, despite petitioners' assertions to the contrary, that petitioners intentionally omitted income received from petitioner's arrangement with associate dentists. Although all checks in payment for the services of the associate dentists were made out directly to the associate who performed the work, they were always deposited in petitioners' joint bank account. Only then did petitioners pay the associate dentists their percentage of the fee. Petitioners never included the money deposited in their joint account on the summary sheets for the return preparer. Petitioners did not, however, neglect to deduct the money returned *286 to the associate dentists. By omitting the income received and including only the expense of paying the associate dentists, petitioners were able to avoid inclusion of the money in income for the year and, moreover, were able to deduct the amount paid to the associate dentists. We further note that it appears to be no coincidence that the moneys not reported were moneys for which Forms 1099 would not be issued in petitioners' names but instead were issued in the name of the associate dentist to whom the insurance company made out the check. Although Emma Taylor was primarily in charge of the receipt books and compiling the summary sheets for the accountant, petitioner was involved in creating the accounting system and in helping to compile information for the summary sheets. It was also petitioner who delivered the summary sheets to the accountant when they were ready. Furthermore, petitioner had ultimate authority over the records in his office. Neither petitioner nor Emma Taylor was willing to cooperate with the revenue agent in her investigation. We decline to believe the incredible testimony of petitioners that they supplied all of the records to the revenue agent. It *287 is the testimony of the special agent that the receipt books, critical to the determination, were not made available. This is supported by the indisputable evidence that it was only after a summons was issued and enforced by a court that the receipt books were provided. In light of this evidence, we must conclude that petitioners did not cooperate in the investigation despite their protestations to the contrary. We find that respondent has carried her burden as to the issue of fraud against both petitioners. Substantial Understatement
Petitioner asserts on brief that he ought to receive a waiver of the section 6661(c) penalty for reasonable cause. Petitioner contends that his father's illness during the years in issue gave rise to reasonable cause for the understatements. We disagree. Good faith may exist where the taxpayer gives his tax preparer the information needed for the resolution of tax liability. Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); Yale Ave. Corp. v. Commissioner, 58 T.C. 1062 (1972). *288 The taxpayer herein did not supply the accountant with the information needed to properly complete the return. Despite the fact that petitioner's father was ill and that he was making frequent trips to be with him, his lifestyle was not altered to the extent that he could not function. He continued to practice dentistry and continued to expand his business. Petitioner has not shown any abuse of discretion on respondent's part in denying a waiver under section 6661(c). Innocent Spouse
In the case of a joint return, the liability of the spouses with respect to the tax generally is joint and several. Sec. 6013(d)(3). Section 6013(e), however, creates an exception to that rule, providing a measure of relief where the taxpayer proves herself to be an "innocent spouse" by satisfying the following four requirements: (1) A joint return has been made for the taxable year at issue; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse; [2] (3) the other spouse establishes that, in signing the return, he or she did not know, and had no reason to know, of such substantial understatement; and (4) it would be inequitable *289 to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. Sec. 6013(e)(1). Failure to meet any one of the statutory requirements will prevent petitioner from qualifying for relief under section 6013(e). Bokum v. Commissioner, 992 F.2d 1132 (11th Cir. 1993), affg. 94 T.C. 126, 138 (1990); Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. Petitioner bears the burden of proving that he is *290 entitled to relief as an innocent spouse under section 6013(e). Rule 142(a). In cases of omissions from income, mere knowledge of the underlying transaction that produced the omitted income may be sufficient grounds to deny relief. Winnett v. Commissioner, 96 T.C. 802 (1991). Thus, petitioner, must show that he was unaware of the transaction that produced the income omitted from the return. We decline to accept petitioner's incredible testimony that he was unaware of his dental practice's income. It is wholly unbelievable that a man of petitioner's education and sophistication would be unaware of the receipts from his business. We find that petitioner was aware of the receipt of funds in payment for the associate dentists' work and, therefore, knew of the transaction that produced the omitted income. Petitioner was intimately involved in the daily operations of this business and was involved in compiling the records which were turned over to the return preparer. Emma Taylor made no effort to deceive petitioner as to their finances. Given the facts, we conclude that petitioner at the time he signed the returns knew or should have known that *291 the returns contained substantial understatements. It would not be inequitable to hold petitioner liable. Petitioner significantly benefited from the unreported income that gave rise to the deficiencies and penalties. Despite petitioner's protestations to the contrary, the Court finds that he did in fact maintain a luxurious lifestyle. He used the unreported income to purchase a BMW, a four-wheel-drive vehicle, a lake home, farmland, and a pleasure boat. We hold that petitioner fails to qualify as an innocent spouse under section 6013(e). Statute of Limitations
Section 6501(a) generally requires that a tax must be assessed within 3 years after the return was filed. Petitioners assert that the period of limitations has expired on the 1982 tax year. However, section 6501(c) extends the period of limitations. It provides that, in the case of a "false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." Sec. 6501(c)(1). Since respondent has carried her burden of proof as to the issue of fraud, the assessment against petitioners for the 1982 tax year *292 is not time-barred. Decisions will be entered under Rule 155. Footnotes
1. Fifty percent of the interest due on the deficiency.↩
1. References to petitioner in the singular are to Thad Taylor, Jr.↩
2. Although the parties have not addressed the point, the omission from income in the case herein was attributable to petitioner, who now attempts to claim innocent spouse protection. In these circumstances, this is an independent ground under which petitioner must be denied innocent spouse relief. See sec. 6013(e)(a)(B). See also Grubich v. Commissioner, T.C. Memo. 1993-194↩.