**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 24 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

EMMA TAYLOR,

      Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent-Appellee.

No. 96-9000

(T.C.. No. 17521-92)
(United States Tax Court)
(69 T.C.M. (CCH) 2932)

---

THAD TAYLOR, JR.,

      Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent-Appellee.

No. 96-9001

(T.C. No. 17558-92)
(United States Tax Court)
(69 T.C.M. (CCH) 2932)

---

ORDER AND JUDGMENT[*]

---

    [*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.[**]

Petitioners-Appellants Thad Taylor, Jr. and Emma Taylor, husband and wife, filed joint federal Form 1040 income tax returns for the years 1982-1984. Taxpayers reported total taxable income of $27,962 in 1982, $0 in 1983, and $1,674 in 1984. Commissioner's subsequent audit of those returns revealed that taxpayers omitted gross receipts from Mr. Taylor's dental business in excess of $240,000 per year. Commissioner notified taxpayers of tax deficiencies, plus penalties and interest for fraud and substantial understatements of tax liabilities. For the tax years 1982-1984, Commissioner assessed taxpayers additional taxes owing in the amounts of $121,615, $131,927, and $114,093, respectively. Pursuant to I.R.C. § 6653(b)(1) & (2), Commissioner further assessed taxpayers penalties for fraud in the amounts of $60,808, $65,964, and $57,047, respectively, plus 50% of the interest due on these amounts. Pursuant to I.R.C. § 6661, Commissioner also assessed taxpayers penalties for substantial understatements of tax liabilities in the amounts of $30,404, $32,982, and 28,523, respectively.

---

[**] After examining the briefs and appellate records, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. These appeals therefore are submitted without oral argument.

Taxpayers filed consolidated petitions in the United States Tax Court challenging Commissioner's foregoing assessments. Prior to trial, taxpayers stipulated to the assessments of additional taxes owing for the years 1982-84, but continued to contest the assessments for fraud and substantial understatements of tax liabilities. Following a bench trial, the tax court delivered a thorough written opinion ruling for Commissioner in all respects. Taylor v. Commissioner, 69 T.C.M. (CCH) 2932 (1995). The tax court's findings of fact are well supported by the record, and we need not reiterate them here except to the extent necessary in our substantive discussion of the issues. Taxpayers raise the following issues on appeal: (1) whether the tax court improperly relied on taxpayers' assertion of their Fifth Amendment right against self-incrimination to find that taxpayers fradulenty omitted income from their tax returns;[1] (2) whether the tax court improperly imputed Mrs. Taylor's intent to Mr. Taylor; and (3) whether the tax court improperly provided a basis for Commissioner's failure to waive the penalties for substantial understatements of tax liabilities. Our jurisdiction to review these matters arises under I.R.C. § 7482 and Fed. R. App. P. 13. We affirm.

---

[1] Because Mrs. Taylor pled guilty under 26 U.S.C. § 7201 to federal income tax evasion for the year 1982, she is collaterally estopped in this civil proceeding from denying fraud under I.R.C. § 6653(b) for the year 1982. Klein v. Commissioner, 880 F.2d 260, 262 & n.2 (10th Cir. 1989).

3

I.

Subsection 6653(b)(1) of the Internal Revenue Code of 1954, applicable here, provides that "[i]f any part of any underpayment . . . of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." Subsection (b)(2) provides for an interest penalty based on the amount assessed under subsection (b)(1). Commissioner has the burden of proving fraud by clear and convincing evidence. I.R.C. § 7454(a). Where a joint return is involved, Commissioner must establish fraud as to each spouse before the court may hold both spouses accountable. 26 C.F.R. § 301.6653-1(f). Fraud requires an "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Zell v. Commissioner, 763 F.2d 1139, 1142-43 (10th Cir. 1985) (internal quotations omitted). "The required state of mind is one which, if translated into action, is well calculated to cheat or deceive the government." Heyen v. United States, 945 F.2d 359, 364 (10th Cir. 1991) (internal quotations omitted).

In these cases, the tax court heard the evidence and made the following findings regarding taxpayers' conduct:

> While the mere understatement of income alone is not sufficient to prove fraud, the consistent and substantial understatement of income is, of itself, strong evidence of fraud. Petitioners herein admit that they underreported their total tax due for all the years in issue. In fact, petitioners reported less than 5 percent of tax due on their joint Federal income tax returns for each of the years at issue.

4

The understatements of income tax are the direct result of petitioners' omission of substantial gross receipts from the dental business of petitioner [Thad Taylor, Jr.]. We find, despite petitioners' assertions to the contrary, that petitioners intentionally omitted income received from petitioners' arrangement with associate dentists. Although all checks in payment for the services of the associate dentists were made out directly to the associate who performed the work, they were always deposited in petitioners' joint bank account. Only then did petitioners pay the associate dentists their percentage of the fee. Petitioners never included the money deposited in their joint account on the summary sheets for the return preparer. Petitioners did not, however, neglect to deduct the money returned to the associate dentists. By omitting income received and including only the expense of paying the associate dentists, petitioners were able to avoid inclusion of the money in income for the year and, moreover, were able to deduct the amount paid to the associate dentists. We further note that it appears to be no coincidence that the moneys not reported were moneys for which Forms 1099 would not be issued in petitioners' names but instead were issued in the name of the associate dentist to whom the insurance company made out the check.

Although Emma Taylor was primarily in charge of the receipt books and compiling the summary sheets for the accountant, petitioner [Thad Taylor, Jr.] was involved in creating the accounting system and in helping to compile information for the summary sheets. It was also petitioner who delivered the summary sheets to the accountant when they were ready. Furthermore, petitioner had ultimate authority over the records in his office.

Neither petitioner nor Emma Taylor was willing to cooperate with the revenue agent in her investigation. We decline to believe the incredible testimony of petitioners that they supplied all of the records to the revenue agent. It is the testimony of the special agent that the receipt books, critical to the determination, were not made available. This is supported by the indisputable evidence that it was only after a summons was issued and enforced by a court that the receipt books were provided. In light of this evidence, we must conclude that petitioners did not cooperate in the investigation despite their protestations to the contrary.

We find that respondent has carried her burden as to the issue of fraud against both petitioners.

5

Taylor v. Commissioner, 69 T.C.M. (CCH) 2932, 2936-37 (1995) (internal citations omitted). We review the tax court's factual findings under a clearly erroneous standard and review its legal conclusions de novo. We review mixed questions of law and fact under one of these two standards depending on whether the question is primarily factual or legal. Anderson v. Commissioner, 62 F.d. 1266, 1270 (10th Cir. 1995).

Taxpayers assert that the tax court improperly found they failed to cooperate with Commissioner in the civil investigation because they failed to provide the special agent with the receipt books from the dental business. Taxpayers claim they invoked their Fifth Amendment right against self-incrimination in failing to provide the receipt books. To be sure, once the special agent referred the investigation to Commissioner's criminal division, taxpayers' attorney specifically invoked the Fifth Amendment on his clients' behalf. The United States District Court then granted taxpayers use immunity and enforced a summons demanding delivery of the receipt books. But the facts indicate that taxpayers failed to provide the receipt books well before they or their attorney invoked the Fifth Amendment. The record supports the tax court's findings that taxpayers failed to cooperate with Commissioner from the beginning of the civil investigation. Taxpayers did not claim any Fifth Amendment privilege until they became the subject of a criminal investigation six months after the special agent conducting the civil investigation initially requested the receipt books.

During October or November of 1985, the Internal Revenue Service began examining petitioners' Federal income tax liabilities for the years at issue. On November 7, 1985, a revenue agent served an information document request on petitioners. The request specifically asked that petitioners provide the receipt books. In addition to the formal written request, the revenue agent orally requested the receipt books from both petitioners on at least one occasion at the dental office. Petitioners repeatedly told the revenue agent that at least some of the requested receipt books had been lost in a flood. Petitioners located and had available those few receipt books which had been affected by the flood "a month or so" after petitioners' first meeting with the revenue agent. All such affected receipt books remained legible. Neither petitioner ever told the revenue agent that all the receipt books were available.

Taylor, 69 T.C.M. at 2935. Taxpayers did not invoke their Fifth Amendment privilege until, at the earliest, May 1, 1986. That was the day the criminal investigator asked taxpayers for the receipt books. We conclude that the tax court did not improperly rely on taxpayers' assertion of their Fifth Amendment right against self-incrimination to find that taxpayers fraudulently omitted income from their income tax returns.[2] The tax court referred to the district court's enforcement of the criminal summons simply to buttress its finding that taxpayers failed to cooperate with Commissioner from the beginning of the civil investigation .[3]

---

[2] The record on appeal does not contain the criminal summons. The record and briefs suggest, however, that the summons may have been directed at Mr. Taylor only. If in fact the summons only requested production of the receipt books from Mr. Taylor and not Mrs. Taylor, Mrs. Taylor has no standing to assert a Fifth Amendment right in the receipt books because the government did not ask her to produce them. cf.. Donaldson v. United States, 400 U.S. 517, 530-31 (1971); United States v. Bray, 546 F.2d 851, 855 (10th Cir. 1976).

[3] Having said all this, quite possibly taxpayers had no Fifth Amendment privilege in the receipt books. "[The Fifth Amendment protects the person asserting the

Moreover, the tax court did not rely on taxpayers' failure to cooperate alone to find they acted fraudulently. While failure to cooperate certainly is an indicia of fraud, Zell v. Commissioner, 763 F.2d 1139, 1146 (10th Cir. 1985), other indicators are the (1) consistent and substantial understatement of income, (2) failure to maintain adequate records, (3) inconsistent or implausible explanations of behavior, and (4) awareness of the obligation to file returns, report income, and pay taxes. Dodge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990). In addition to taxpayers' failure to cooperate, the tax court cited factors one, three, and four in concluding that Commissioner had proven taxpayers' fraud by clear and convincing evidence. Taylor, 69 T.C.M. at 2936-37. Because the tax court's findings of fact are not clearly erroneous and its legal conclusion based on those facts is sound, we will not disturb the tax court's judgment.

II.

Mr. Taylor argues that he relied entirely on his wife and accountant to properly

---

privilege only from compelled self-incrimination. Where the preparation of business records is voluntary, no compulsion is present." United States v. Doe, 465 U.S. 605, 610 (1984) (emphasis in original) (internal citation omitted). In this instance, taxpayers voluntarily created the receipt books, and thus the books' contents are not privileged under the Fifth Amendment. Id. at 612. But while the contents of the receipt books may not be privileged, the act of producing them was subject to Fifth Amendment privilege to the extent that the books remained in the possession of the taxpayers. Id. at 612-17. To the extent the receipt books were in the hands of taxpayers' attorney, the attorney-client privilege might serve to protect their production, but the Fifth Amendment does not. Fisher v. United States, 425 U.S. 391, 402 (1976) ("compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself").

8

report the income from his dental business. He claims nothing in the record supports the tax court's finding that he attempted to defraud Commissioner. As we previously explained, Commissioner must establish fraud as to one spouse independent of the other before holding the former spouse liable under I.R.C. § 6653(b). Treasury Regulation § 301.6653-1(f) provides:

> (f) *Joint returns*. No person filing a joint return shall be held liable for a fraud penalty except for his own personal fraudulent conduct. Thus, for the fraud penalty to apply to a taxpayer who files a joint return some part of the underpayment in such return must be due to the fraud of such taxpayer. A taxpayer shall not be subject to the fraud penalty solely by reason of the fraud of a spouse and his filing of a joint return with such spouse.

26 C.F.R. § 301.6653-1(f).

Nothing in the tax court's opinion indicates that the court imputed Mrs. Taylor's fraudulent conduct to Mr. Taylor. Rather, the tax court acknowledged the governing law, and found Mr. Taylor independently liable for fraud. While Mr. Taylor denied any knowledge of any wrongdoing, and the tax court was free to accept his story, the court expressly stated that it did not believe Mr. Taylor. In addition to finding that Mr. Taylor had created the accounting system for his dental business and assisted his wife in compiling the summary sheets for their accountant, the tax court noted, among other things, that Mr. Taylor (1) had been licensed to practice dentistry since 1963, (2) had served as an infantry captain in the United States Army where his duties included counting and disbursing payroll funds each month to over 300 soldiers under his

9

command, and (3) had filed an income tax return for more than twenty five years. Taylor, 69 T.C.M. at 2933-34. Although Mr. Taylor testified that he did not understand the federal income tax, he "was unable at trial to explain exactly what he did not understand about the federal income tax forms." Id. at 2934-35. We conclude that the tax court did not improperly impute Mrs. Taylor's fraudulent conduct to Mr. Taylor, but rather found Mr. Taylor independently liable for fraud upon ample proof.

### III.

Finally, taxpayers assert that the tax court improperly provided a basis for Commissioner's failure to waive the penalties for substantial underpayment of tax liabilities. Section 6661 of the Internal Revenue Code of 1954 provides generally that "[i]f there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement." I.R.C. § 6661(a).[4] Commissioner, however, may waive an understatement penalty if the taxpayer shows good faith and establishes reasonable cause for the understatement. I.R.C. § 6661(c).

---

[4] Subsection (b) of I.R.C. § 6661 defines a substantial understatement as the amount greater than 10% of the tax required to be shown on the tax return, or $5,000, whichever is larger.

10

In this instance, the tax court concluded that the facts established Commissioner did not abuse her discretion in denying taxpayers a § 6661(c) waiver. Taxpayers now claim that Commissioner did not give any reason for denying taxpayers a waiver, and thus abused her discretion by failing to exercise her discretion. Fisher v. Commissioner, 45 F.d. 396, 397 (10th Cir. 1995) ("By failing to rule specifically on the request for waiver and by failing to offer any reasons for her decision, the Commissioner failed to demonstrate that she had exercised her discretion and thereby abused that discretion.").

The problem with taxpayers' argument is that nowhere in the record can we find where they specifically requested a § 6661(c) waiver from Commissioner. Taxpayers claim in their brief that they requested a waiver by letter, but never have they moved to supplement the record with the letter, and it is too late to do so now. As we stated in McCoy Enterprises, Inc. v. Commissioner, 58 F.d. 557, 563 (10th Cir. 1995):

> [Before we can review the Commissioner's refusal to waive an understatement penalty pursuant to 26 U.S.C. § 6661(c), the record must reveal (1) that the Commissioner knows a taxpayer is claiming that the understatement should be excused by reasonable cause and good faith; (2) that the taxpayer's request has been presented with sufficient evidentiary support; and (3) that the Commissioner actually makes a determination on the issue.

Because taxpayers have not demonstrated they presented their objections to the understatement penalties to Commissioner with sufficient evidentiary support, we

11

cannot conclude that Commissioner abused her discretion by failing to waive the penalties.[5]

For all the foregoing reasons, the judgment of the United States Tax Court is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

---

[5] In any event, our review of the record indicates it is highly unlikely that taxpayers could meet their burden of proving they acted in good faith and with reasonable cause in understating their income for the tax years 1982-84 where they have been held liable for attempting to defraud Commissioner as to their actual income for those years.